EMMET HILEMAN, APPELLEE, V. CHARLES H. MAXWELL, APPELLANT.

FILED OCTOBER 16, 1914. No. 17,840.

1. **New Trial: EVIDENCE.** A new trial should be allowed, when it is clear that material uncontradicted evidence has been disregarded by the jury, and which, if considered and given due weight, would have required a different verdict from that returned.

2. **Compromise and Settlement:** Consideration. "Where there is a *bona fide* dispute between parties as to the amount due upon an account, and the debtor tenders a less amount than the claim in full settlement, which the creditor accepts, with knowledge that it was tendered as a full settlement, the dispute will be a sufficient consideration to uphold the settlement, and will bar a recovery upon the remainder of the claim." *Partridge Lumber Co. v. Phelps-Burruss Lumber & Coal Co.*, 91 Neb. 396.

Appeal from the district court for Dakota county: Guy T. Graves, Judge. *Reversed.*

*R. E. Evans,* for appellant.

*J. J. McAllister* and *W. V. Steuteville,* contra.

Barnes, J.

This is an appeal from a judgment of the district court for Dakota county, in a suit brought by one Emmet Hileman against Charles H. Maxwell to recover the sum of $334.05, alleged to be due the plaintiff for work and labor by himself and team from the 3d day of April, 1907, to January 5, 1910. To plaintiff's petition defendant filed an answer, setting out certain payments made to plaintiff during the time he was employed, amounting to $559.15, and a claim against plaintiff for $430 alleged to be due defendant for feeding and housing certain domestic animals belonging to plaintiff during the time he was employed by defendant, and the cost of keeping plaintiff's team when it was not working. Defendant denied that plaintiff worked for him during all of the time mentioned in his petition, and alleged that during that time there were ten days in which the plaintiff performed no labor for the defendant. As a further defense defendant pleaded a settlement between himself and the plaintiff on January 5, 1910, in which it was found and agreed that the defendant owed the plaintiff the sum of $47.35; that plaintiff then and there paid defendant in full, by giving him $20 in cash and a check for $27.35, which plaintiff accepted, retained and cashed in full payment of all of his demands and claims against the defendant. The reply

put in issue the allegations of the answer. On the issues thus joined a trial resulted in a verdict and judgment for the plaintiff for the sum of $326.35, and the defendant has appealed.

It is defendant's contention that the verdict and judgment are not sustained by the evidence. It appears from the record, without dispute, that on the 3d day of April, 1907, the parties entered into an agreement whereby defendant employed the plaintiff to work for him about his place in town and on his farm near-by for $50 a month when he used his team, and $40 a month when he worked without his team; that plaintiff accepted such employment, and in a day or two commenced to work for the defendant. Shortly thereafter plaintiff asked the defendant if he could turn his domestic animals into defendant's yards and sheds, and defendant replied that he could do so, provided he would pay for the feed consumed by them. Some talk was had as to what such feed would be worth, and it was agreed that whatever the neighbors would say it was worth the plaintiff should pay the defendant. There is no disagreement as to the terms of the contracts. The testimony shows that there was a partial settlement between the parties on June 3, 1908, at which time the defendant owed the plaintiff $63. The parties were not agreed as to what plaintiff should pay defendant for feeding and housing his stock, and that matter was left open for further consideration. The plaintiff testified that he worked for defendant from June 3, 1908, to January 5, 1910, and that a greater part of that time he worked with his team. This defendant admitted, but showed that plaintiff lost ten days during that time, doing no work at all, and that for five months during his employment his team was not used in working for the defendant, and those facts were not disputed by the plaintiff. So it may be said that it was fairly established that plaintiff's wages for himself and his team amounted to the sum of $983, including the $63 due him at the June settlement of 1908. The testimony shows, without dispute, that defendant had paid the plaintiff the sum of $559.15, without allowing

Hileman v. Maxwell.

anything for the feed and care furnished plaintiff for his stock. This would leave defendant indebted to plaintiff in the sum of $422.85.

It appears from the testimony that plaintiff had in defendant's yards two cows all of the time of his employment, three head of horses about two months, a mare and colt about 45 days, one colt from May 9, 1909, to January 5, 1910, two calves for November, 1909, two colts from October 20 to December 26, 1907, one mule for a month and a half, in April and May, 1907. Plaintiff's animals were fed hay, alfalfa, kafir-corn, grain, corn, and straw. In fact, they were fed and cared for the same as was defendant's own stock. In addition to this, defendant fed plaintiff's team five months during which time plaintiff did not work them for the defendant. Plaintiff by his own testimony fixed the value of the feed furnished his stock at the sum of $146.50. This would leave as a balance due him the sum of $276.35, while the verdict and judgment in his favor was for $326.35. We find from the bill of exceptions, however, that plaintiff furnished no competent evidence of the value of the feed and care furnished by defendant for his stock. No witness testified for him on that question, and his own evidence was clearly incompetent. He testified at first that he did not know what the feed was worth, and after an adjournment he stated he knew what some of it was worth, and so the only competent evidence on that point was the testimony of the defendant's witnesses, who were farmers, and knew the value of the feed and care for such animals as plaintiff testified had been kept and fed in defendant's yards, barns, and sheds. The lowest amount, according to the testimony of defendant's witnesses, which the plaintiff should pay the defendant, was $348.75. This, if the jury had regarded the evidence, would have entitled the defendant to a verdict of something like $72.40. It thus appears beyond all question that the verdict and judgment were not sustained by plaintiff's own evidence. We are therefore constrained to hold that defendant's contention on this point should be sustained.

97 Neb. 2

On the question of the final settlement between the parties, the evidence shows that plaintiff asked the defendant for a settlement. They took their books and went over the matter, and it was found that defendant owed the plaintiff $47.35. Defendant testified that he asked the plaintiff if he wanted his money, and he said he did; that he thereupon paid the plaintiff by giving him a $20 bill, which he had in his pocket, and a check on the bank for $27.35, on the face of which he plainly wrote "Bal. in full to date;" that plaintiff accepted the check, retained it some little time, and cashed it. This the plaintiff admitted, and the check was introduced in evidence; but the plaintiff claimed that he did not read the check, and did not see the plainly written statement thereon that it was the payment of the balance due him in full.

Defendant produced one J. P. Rockwell as a witness in his behalf, who testified that he was well acquainted with both parties to the transaction, and that soon after the 5th day of January, 1910, the plaintiff told him that he had quit working for Maxwell. He said he was somewhat disappointed; that he did not get as much money as he expected; that he expected to do some things that he could not do because he did not get as much money as he expected when they settled; that Maxwell did not owe him as much, according to the settlement, as he expected; that he did not think the settlement was right; that he was not satisfied with it; and that he was not going to stand by it. On cross-examination witness said, in substance, that plaintiff stated that Maxwell charged him too much for keeping his stock. The plaintiff testified that no such conversation occurred between himself and the witness Rockwell. His only explanation of why he retained the check and cashed it was that he did not see the indorsement of "payment in full" which appeared upon the face of the check itself. Upon this branch of the case it is clear that the jury paid no attention whatever to the evidence.

It is contended by the defendant that, plaintiff having received and accepted the check and the $20 in cash, such

payment should be held to be a complete satisfaction of the matter in controversy. In support of this contention counsel for the defendant cites a large number of cases, among which is found *Partridge Lumber Co. v. Phelps-Burruss Lumber & Coal Co.,* 91 Neb. 396, *Chicago, R. I. & P. R. Co. v. Buckstaff,* 65 Neb. 334, and *Treat v. Price,* 47 Neb. 875.

In the first of these cases it was said: "Where a certain amount of money is tendered by a debtor to a creditor on condition that he accept it in full satisfaction of his demand, the sum due being in dispute, the creditor must either refuse the tender or accept it as made, subject to the condition. If he accepts it, he accepts the condition also, notwithstanding any protest he may make to the contrary." It was further held in that case: "When there is a *bona fide* dispute between parties as to the amount due upon an account, and the debtor tenders a less amount than the claim in full settlement, which the creditor accepts, with knowledge that it was tendered as a full settlement, the dispute will be a sufficient consideration to uphold the settlement, and will bar a recovery upon the remainder of the claim." This rule was also announced in *Chicago, R. I. & P. R. Co. v. Buckstaff,* 65 Neb. 334.

In *Treat v. Price,* 47 Neb. 875, it was said: "The rule that when a certain sum is due from one to another, the payment of a lesser sum is no discharge as to the remainder, notwithstanding an agreement to that effect, is founded upon the fact that the latter agreement is without consideration. Such rule does not apply where the amount due is disputed or unliquidated." It was further held: "Where a certain sum of money is tendered by a debtor to a creditor on condition that he accept it in full satisfaction of his demand, the sum due being in dispute, the creditor must either refuse the tender or accept it as made, subject to the condition. If he accepts it, he accepts the condition also, notwithstanding any protest he may make to the contrary."

This rule seems to be well settled by the great weight of authority. In opposition to this rule the plaintiff has directed our attention to *Rapp v. Giddings,* 4 S. Dak. 492. In that case it was said: "Where payment is made by check, which recites on its face, 'in full of all demands,' such words will constitute a receipt in full, as against the payee, only when it is shown that he had knowledge of the presence of such words, or facts are shown which in law would charge him with such knowledge." Counsel also cites *National Life Ins. Co. v. Goble,* 51 Neb. 5. In that case it was held: "In the absence of an express agreement or other circumstances avoiding the operation of the rule, the remittance of a bank draft is not a payment in fact until the draft has been received, presented, and honored. A written acknowledgment or receipt of payment is not conclusive, when the medium of the remittance upon which it is based has failed." Defendant's counsel also cites 30 Cyc. 1223, and 9 Ency. of Evi. 728. These authorities are not directly in point, and it is difficult for us to see, in the light of the evidence, how the plaintiff could have been mistaken or have failed to observe the plainly written words "Bal. in full to date," which are found upon the face of the check which he accepted, held for some little time, and finally cashed at the bank. As we view the evidence, it was sufficient to require the jury to return a verdict for the defendant. It is not necessary to consider the rest of the errors assigned.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.