GROWERS CATTLE CREDIT CORPORATION OF OMAHA, A CORPORATION, APPELLANT, v. MELVIN SWANSON, APPELLEE.

169 N. W. 2d 692

Filed July 25, 1969. No. 37172.

Allen F. Black and Maupin, Dent, Kay, Satterfield & Gatz, for appellant.

James R. Kelly and Johnson, Kelly, Evans & Spencer, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is an action to recover the principal balance on three promissory notes, admittedly signed and executed by the defendant. The trial court sustained a motion for a summary judgment in favor of the defendant and the plaintiff appeals. We affirm the judgment of the district court.

The defendant signed three promissory notes of varying dates in 1962 and 1963 in the sums of $170,000, $250,000, and $385,241.96.

In his original petition herein the plaintiff sought to recover from the defendant three "service charges" on the three notes in the sums of $850, $1,225, and $2,867 for a total of $4,942. In an amended petition the plaintiff sought recovery for the same amount, alleging that the amounts recited above were unpaid principal balances. The defendant in his answer to the amended petition, in substance, alleged that said notes had all been paid in full and had been discharged; that he had received the notes from the plaintiff; and that there were no balances due or owing on said notes.

The evidence in this case shows that on or about December 28, 1964, the defendant received a statement from the plaintiff setting forth the amount of $272,483.54 as the current balance owing on these notes. Included in this amount were the sums of "services charges" for which the plaintiff now is specifically seeking recovery. A misunderstanding or dispute arose between the parties

as to the payment of "service charges" in the amounts hereinbefore recited. On December 30, 1964, the counsel for the defendant, Mr. Kelly, and the plaintiff's Minnesota counsel, Mr. Joseph, engaged in a long distance telephone conversation wherein these obligations, disputes, and misunderstandings were discussed. Following this telephone conversation, the defendant, through his counsel, Mr. Kelly, wrote to the plaintiff (enclosing a check for $267,299.78) as follows. This letter is set out in full.

"December 30, 1964

Maslon, Kaplan, Edelman, Joseph & Borman

Attorneys at Law

1200 Builders Exchange Building

Minneapolis 2, Minnesota

Attention: Mr. Roger E. Joseph

RE: MELVIN SWANSON, ARCADIA, NEBRASKA. ACCOUNT WITH THE GROWERS COMPANY OF MINNEAPOLIS.

"Pursuant to our telephone conversation this morning I am enclosing herewith a check payable to The Growers Companies in the amount of $267,299.78. This is broken down as follows: Statement of the Growers Company of amount due to December 28th of $272,483.54 plus two day's interest at the rate of $47.87 per day or $95.74, for a total of $272,579.28. The fees of the Growers Company which is in contest here to date as of the statements of the Growers Company amount to $5,279.50. Deducting the fees of $5,279.50 leaves the balance due as of this date of $267,299.78, the amount of the check here enclosed.

"This check is sent to you for delivery to the Growers Companies, *conditioned* that the Growers Company release all mortgages of Melvin Swanson occassioned (sic) by this debt and return to Melvin Swanson through this office *all notes* signed by Melvin Swanson as evidence of this indebtedness.

"*When we have received these* instruments you are then

directed and authorized to present the enclosed check to the Growers Company.

"With reference to the fees and commissions charged of $5,279.50, you are hereby notified that *we refuse to pay those amounts alleging they are unlawful and arbitrarily charged* without the consent, permission or authorization of the said Melvin E. Swanson.

James R. Kelly

dnh

Enclosure 1

Certified Mail,/Return Receipt Requested." (Emphasis supplied.)

Plaintiff concedes that the check for $267,299.78 was immediately cashed by the plaintiff; the promissory notes and the chattel and real estate mortgages were satisfied; and the promissory notes sued upon were returned to the defendant. There is no contention of fraud or misrepresentation on the part of either the plaintiff or defendant. After cashing the check and in a letter of January 4, 1965, to defendant's counsel, the plaintiff attempted to reserve the dispute in connection with the service charges by reasserting his claim to these charges and stating that it was its understanding that the amount of the service charges was being held by the defendant in a separate account and subject to further litigation and compromise and settlement.

The defendant categorically denied any liability for service charges, and in his pleading and in the letter recited above, consistently refused to recognize any portion of the claim for service charges. The evidence shows that the agreement for service charges is not included in the notes and rests upon an alleged oral understanding and agreement between the parties. According to the defendant's own concession in the pleadings, in the correspondence of the parties, and in his brief, it was a disputed and unsettled account or portion of the indebtedness. Here applicable is a well-settled principle of Nebraska law that where a certain sum of

money is tendered by a debtor to a creditor on condition that he accept it in full satisfaction of his demand, the sum due being in dispute, the creditor must either refuse the tender or accept it as made subject to the condition. If *he accepts* it, *he accepts the condition also, notwithstanding any protest he may make to the contrary.* Treat v. Price, 47 Neb. 875, 66 N. W. 834. This rule has been followed in Beckman v. Birchard, Bridge & Co., 48 Neb. 805, 67 N. W. 784; Chicago R. I. & P. Ry. Co. v. Buckstaff, 65 Neb. 334, 91 N. W. 426; Canadian Fish Co. v. McShane, 80 Neb. 551, 114 N. W. 594, 14 L. R. A. N. S. 443, 127 Am. S. R. 791; T. M. Partridge Lumber Co. v. Phelps-Burruss Lumber & Coal Co., 91 Neb. 396, 136 N. W. 65; Crilly v. Ruyle, 87 Neb. 367, 127 N. W. 241; Hileman v. Maxwell, 97 Neb. 14, 149 N. W. 44.

An interpretation of the letter of December 30, 1964, from the defendant to the plaintiff is not necessary. It could well have been drafted with the language of Treat v. Price, *supra*, in mind. The acceptance and cashing of the check, the satisfaction and discharge of the chattel and real estate mortgages, and the discharge and return of the notes released the obligation of the notes sued on. The afterthought protest and attempt to revive the dispute was ineffectual, under the exact language of the rule announced in Treat v. Price, *supra*. In plain language, it is an attempt of a party to have his cake and eat it too.

Applicable here also are the following provisions of the Uniform Negotiable Instruments Law in full force and effect at the time of the transactions in question: "A negotiable instrument is discharged * * * (3) by the intentional cancellation thereof by the holder; * * * (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right." § 62-1,119, R. R. S. 1943 (Reissue of 1958).

The defendant substantially pleaded that the notes had been paid and discharged. The pleadings in this case have been pierced to show conclusively that in the dis-

pute as to the alleged principal balance due that the plaintiff had received and cashed a check tendered on condition of full acceptance and thereafter returned and discharged the notes and chattel and real estate mortgages involved. The purpose of a summary judgment proceeding is to pierce the allegations of the pleadings and to show conclusively that the controlling facts are otherwise than as alleged and that the moving party is entitled to judgment as a matter of law. Prairie View Tel. Co. v. County of Cherry, 179 Neb. 382, 138 N. W. 2d 468.

The action of the district court in sustaining the defendant's motion for a summary judgment was in all respects correct and is affirmed.

AFFIRMED.