STRELSA LEE LANGNESS, APPELLEE, V. THE "O" STREET CARPET SHOP, INC., A NEBRASKA CORPORATION, APPELLEE, HERBERT J. FRIEDMAN, APPELLANT.

353 N.W.2d 709

Filed June 8, 1984. No. 83-215.

Earl J. Witthoff of Perry, Perry, Witthoff, Guthery, Haase, and Gessford, P.C., for appellant.

Rodney J. Rehm of Rehm & Bartling, for appellee Langness.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This is an action for an accounting among partners. Defendant-appellant, Herbert J. Friedman, appeals from the decree adjudging that he and a second partner jointly and severally owe the third partner, plaintiff-appellee Strelsa Lee Langness, the sum of $7,290.42. We affirm as modified.

On August 23, 1973, Friedman, The "O" Street Carpet Shop, Inc., through its president, Gerald Neva, and Langness formed a partnership known as NFL Associates. At that time "O" Street Carpet contributed to the partnership a $56,000 purchase agreement on a piece of rental property valued at $65,000. Langness contributed $14,000 in cash, and Friedman contributed his legal services, upon which no value was placed by the articles of partnership. Of Langness' $14,000, $8,000 went to "O" Street Carpet and $6,000 was used for the downpayment on the purchase agreement and to otherwise fund the partnership operations. The articles of partnership provided that Langness was to receive payments of $116.66 per month. Neva executed a personal guarantee by which he agreed to make the $116.66 monthly payments to Langness if the income of the partnership proved insufficient.

Langness never paid income tax on the monthly payments, nor did the partnership take expense deductions for those payments on its tax return. The partnership's accountant treated the payments as a return to Langness of her capital.

In October of 1978 the partnership sold the rental property which was the subject of the purchase agreement contributed by "O" Street Carpet, and realized $52,001.20 on that transaction. The partnership was wound up; whereupon Neva and Friedman calculated the final distribution of the $48,824.41 in assets remaining, after payment of the $3,176.79 in debts owed by the partnership, to be:

| | |
|---|---|
| Langness | $16,792.01 |
| "O" Street Carpet | 26,808.58 |
| Friedman | 5,223.82 |

Friedman delivered a check for $16,792.01 to Langness, which, although unhappy about the distribution, she cashed.

Langness then brought this action, claiming that she is entitled to a larger share of the partnership assets. The district court found that her final share of

the partnership should be $24,082.43, and entered judgment against both Friedman and "O" Street Carpet for $7,290.42, declaring them to be jointly and severally liable thereon.

Since only Friedman appealed from the trial court's decree, "O" Street Carpet, having been served with a copy of the notice of appeal, is an appellee herein. Neb. Ct. R. 1C (Rev. 1983).

Friedman's assignments of error are that the trial court erred in (1) misconstruing the partnership agreement; (2) determining the amount of each partner's capital contributions; (3) finding that the payments made to the plaintiff during the existence of the partnership constituted a return on capital; (4) finding that there had been no accord and satisfaction between the parties; and (5) finding that Friedman and "O" Street Carpet were jointly and severally liable.

Friedman correctly characterizes an action for an accounting between partners to be one grounded in equity. Accordingly, as in all matters of equity, the scope of our review is de novo on the record. *Badran v. Bertrand*, 214 Neb. 413, 334 N.W.2d 184 (1983); *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982); *Barthuly v. Barthuly*, 192 Neb. 610, 223 N.W.2d 429 (1974).

Friedman's first three assignments of error are best analyzed by reviewing the capital contributions made by the parties, the nature of the payments made to Langness, and the distributions made to each of the three partners upon the winding up of the partnership.

As stated earlier, at the time the partnership was formed, "O" Street Carpet contributed a $56,000 purchase agreement on property with a fair market value of $65,000, for a contribution of property worth $9,000. However, $8,000 of the $14,000 contributed by Langness went to "O" Street Carpet, thereby reducing its capital contribution at that time to $1,000. During the life of the partnership, "O" Street Carpet

contributed an additional $4,005 in capital. Thus, "O" Street Carpet's total capital contribution is $5,005.

Friedman contributed no money or property. It is the general rule that a partner who contributes only services to the partnership is not deemed to have made a capital contribution to the partnership such as to require capital repayment upon dissolution unless the parties have agreed to the contrary. *Badran v. Bertrand, supra*; *Baum v. McBride*, 152 Neb. 152, 40 N.W.2d 649 (1950); 68 C.J.S. *Partnership* § 391 (1950).

Friedman argues that since, by the agreement, he was given 10 percent of the partnership, he was entitled to be credited with a like amount of the partnership capital upon dissolution. While the agreement specifically states that Friedman is entitled to 10 percent of the partnership profits, it mentions nothing concerning his rights to partnership capital upon dissolution. We see nothing in the agreement which indicates the general rule is not to apply. Therefore, Friedman made no capital contribution to the venture.

We next address the nature of the payments made to Langness. The articles of partnership called for the partnership to pay to Langness $116.66 per month for the life of the partnership. While this provision of the articles is found under a section labeled "Distribution of Profits and Losses," the agreement does not state whether it is to be treated as an advance on profits or a capital withdrawal. The personal guarantee executed by Neva labeled it a "return on the $14,000.00 investment." Both accountants who testified at the trial stated that the payments were treated as capital withdrawals. Langness treated the payments as such when preparing her tax returns. The tax returns of the partnership did not treat them as expenses. Although Friedman argues that they should be treated as advances against Langness' future profits, we do not see any

reason to do so when the partnership itself treated them otherwise.

From our review of exhibit 27, a ledger of the payments made by checks issued by NFL Associates, we find that Langness was issued 47 checks for $116.66, 3 checks for $233.32, and 1 check for $117.32. We calculate her total capital withdrawals as $6,300.30, a figure different than that urged upon us by the parties or found by the district court. This $6,300.30 reduced her capital in the partnership to $7,699.70.

We now reach the question of the appropriate amounts of the distribution to each of the partners. The partnership agreement provides: "Upon the dissolution of the partnership after settlement of all of it's [sic] debts, liabilities, and other obligations, the partners are entitled to all remaining assets of the partnership in equal proportions in liquidation of all of their respective interests in the partnership." Amounts owing to partners to reimburse them for capital contributions are liabilities of the partnership and take priority over amounts owing to partners in respect to profits. Neb. Rev. Stat. § 67-340 (Reissue 1981).

Of the $48,824.41 in assets remaining after payment of the partnership's debts, $7,699.70 is to be paid to Langness for her capital contribution and $5,005 to "O" Street Carpet for its capital contribution. The remaining $36,119.71 is to be divided according to the partners' share in the profits, which is on a 45-45-10 basis. This calculation requires $16,253.87 to be paid to Langness for profit, the same amount to "O" Street Carpet, and $3,611.97 to Friedman. At the time of the winding up of the partnership, the distributions should have been as follows:

|  | Return of Capital | + | Share of Profits | = | Total |
|---|---|---|---|---|---|
| Langness | $ 7,699.70 |  | $16,253.87 |  | $23,953.57 |
| "O" Street Carpet | 5,005.00 |  | 16,253.87 |  | 21,258.87 |
| Friedman | 0.00 |  | 3,611.97 |  | 3,611.97 |
|  | $12,704.70 |  | $36,119.71 |  | $48,824.41 |

Since Langness was paid only $16,792.01, she is entitled to an additional $7,161.56.

Friedman argues in his fourth assignment of error that no matter what Langness might have been entitled to receive, his delivery and Langness' acceptance and cashing of the check for $16,792.01 discharged the debt owing by the partnership to Langness. Friedman cites language from *Growers Cattle Credit Corp. v. Swanson*, 184 Neb. 612, 169 N.W.2d 692 (1969), which he believes supports his position that there was an accord and satisfaction.

> Here applicable is a well-settled principle of Nebraska law that where a certain sum of money is tendered by a debtor to a creditor on condition that he accept it in full satisfaction of his demand, the sum due being in dispute, the creditor must either refuse the tender or accept it as made subject to the condition. If *he accepts* it, *he accepts the condition also, notwithstanding any protest he may make to the contrary.*

*Id.* at 615-16, 169 N.W.2d at 695.

The problem with Friedman's contention is that neither Langness' nor Friedman's testimony establishes that the check was offered only upon the condition that it be considered as full satisfaction. Friedman asks that we infer such a condition. We think the better rule is that such condition must either be recited upon the check or otherwise declared. See *Fremont Foundry & Machine Co. v. Norton*, 3 Neb. (Unoff.) 804, 92 N.W. 1058 (1902).

In his fifth assignment Friedman argues that the district court erred in finding that he and "O" Street Carpet were jointly and severally liable to Langness. We agree with Friedman that his liability should be no more than the excess he received over his proper share. While it is true, as Langness contends, that partners are in a fiduciary relationship, that proposition does not lead to the imposition of automatic joint liability of the defendant partners to the plaintiff partner for debts owing by the partnership to the

plaintiff partner. Neb. Rev. Stat. § 67-321(1) (Reissue 1981) provides:

(1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

Upon dissolution each partner impliedly consents that his copartners receive their appropriate shares of the partnership assets. Anything one partner receives over his appropriate share is obtained without the consent of the other partners. Therefore, Friedman holds any amount he received over his appropriate share in trust for the partnership, which in turn owes it to Langness. The same is true for the excess amount received by "O" Street Carpet. We note that this is not a case where it was pled or proved that Friedman and "O" Street Carpet engaged in a concerted fraud upon their partner Langness.

Therefore, the judgment of the district court is modified as follows: Langness shall have judgment against and recover from Friedman the sum of $1,611.85, the difference between the amount he received, $5,223.82, and the amount he should have received, $3,611.97. Further, Langness shall have judgment against and recover from "O" Street Carpet the amount of $5,549.71, the difference between the amount it received, $26,808.58, and the amount it should have received, $21,258.87.

Lastly, we call attention to a matter which regrettably, to the disadvantage of the court, is widespread and occurs with increasing frequency. The bill of exceptions filed in this case was not prepared in accordance with our rules. It is, among other things, in violation of Neb. Ct. R. 5F(3) (Rev. 1983), which provides in pertinent part as follows:

Exhibits are to be marked in numerical order,

irrespective of the party producing them. Ordinarily, exhibits or papers contained in the bill of exceptions should be placed in the record immediately following where they are ruled on by the court. If exhibits are frequently referred to in the testimony, they should be inserted in the record in such a manner as to be easily removed; for instance, by placing them in an attached envelope. If the exhibits are of such character or so numerous that to insert them in any volume containing testimony would make the volume cumbersome and difficult to handle while reading, then such exhibits should be contained in a separate volume. If exhibits are of such character that they cannot be inserted in a bound volume, then they should separately accompany the record. Whether in separate volumes or separately accompanying the record, all exhibits should be properly identified as part of the record in the reporter's certificate. Counsel shall substitute photographs or mechanical drawings and descriptions for any large or cumbersome exhibits where such would fairly present such exhibits to the appellate court.

The bill of exceptions certifies that it contains "Exhibit Nos. 1 to 25, and 27," all in a separate volume. That "separate volume" is an envelope into which these exhibits have been placed in an unbound condition. Since there is an exhibit 25 among them, we assume the reporters (in this case there were, for reasons unknown to us, two) intended the certificate to read Exhibit Nos. 1 to 25, inclusive, and 27. Had we found no exhibit 25, the certificate as phrased would have led us to wonder whether such an exhibit should have been a part of the bill.

As presented to us, there was no exhibit 2, the articles of partnership, contained in the bill. It took the special effort of our clerk's office to locate and obtain a facsimile of that exhibit, which counsel advised at oral argument was a true and accurate sub-

stitution for the actual exhibit. This omission delayed the court's review of the evidence and preparation for hearing the oral arguments. The fact that exhibit 2 may have been in the bill of exceptions when it left the reporters' hands is no answer, for if the exhibit had been placed and bound as the above-cited rule contemplates, it is less likely that it would have been removed from the bill and misplaced during the period the bill was being used by counsel to prepare their briefs. On the other hand, counsel are reminded that once filed with the clerk of the district court, the bill of exceptions as prepared by the reporter becomes the official bill of exceptions in the case and is not to be altered or marked in any fashion by any person. Neb. Ct. R. 5C(5) (Rev. 1983).

In addition to the above-described problems, the fact that multiple exhibits were placed in a single envelope unattached to any volume of the bill of exceptions permitted them to arrive here in helter-skelter condition, thereby again unnecessarily complicating our review and adding to the time our reporter's office must spend working with the record.

Documents of the number and type involved here are neither of such character nor so numerous as to justify the expedient of placing them loosely in an envelope rather than physically attaching them to a bound volume of the bill of exceptions. Indeed, it is a rare document which is of such a character as to justify departure from the usual placement contemplated by the rule of this court, and an even rarer one which justifies its not being physically attached as described previously.

We call attention to the fact that appellant is responsible for filing the bill of exceptions in this court and that the bill of exceptions is the only vehicle for bringing evidence to this court. *Flood v. Keller*, 214 Neb. 797, 336 N.W.2d 549 (1983); *Snyder v. Nelson*, 213 Neb. 605, 331 N.W.2d 252 (1983); *Hanson v. Han-*

*son*, 198 Neb. 675, 254 N.W.2d 699 (1977); Neb. Ct. R. 5C(5) (Rev. 1983). No matter how entitled, a document which does not comply with our rules as to the preparation of bills of exceptions is not such a bill. In the future the filing of an improperly prepared bill of exceptions may result in a case being treated as if no bill had been filed. The fact that this court's staff undertook to search out a missing piece of evidence is not to be taken as an indication that such will be done in the future.

The cause is remanded to the trial court for modification of its judgment in accordance with this opinion.

AFFIRMED AS MODIFIED.

KRIVOSHA, C.J., not participating.