CASS CONSTRUCTION COMPANY, INC., A NEBRASKA CORPORATION, APPELLANT, V. TIM BRENNAN AND JIM ASMUSSEN, APPELLEES.

382 N.W.2d 313

Filed February 28, 1986.   No. 84-867.

Robert E. Wheeler of Stowell & Wheeler, P.C., for appellant.

Donna M. Farrell of Peebles, Smith & Farrell, for appellee Asmussen.

John M. Gerrard of Domina & Gerrard, P.C., for appellee Brennan.

William B. Brandt and Robert J. Hallstrom of Brandt, Horan, Hallstrom & Sedlacek, for amicus curiae Retail Merchants Association of Nebraska, Inc.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This appeal presents the question of whether Neb. U.C.C. § 1-207 (Reissue 1980) has altered the common-law doctrine of accord and satisfaction as applied to checks tendered in full payment of a disputed obligation. The issue was before the district court on cross-motions for summary judgment. The

trial court sustained the defendants' motions for summary judgment and dismissed the plaintiff's petition.

On approximately March 1, 1980, Cass Construction Company, Inc. (Cass), and Tim Brennan and Jim Asmussen, acting on behalf of A & B Land Company, entered into an oral agreement in which Cass agreed to do certain dirt-moving work on the defendants' property in Antelope County, Nebraska, for $5,600.

During the time that Cass was performing the work, Brennan contacted John Hruby, an employee of Cass, concerning additional dirt-moving work not included in the $5,600 bid. Apparently, the parties orally agreed that the additional work would be billed on an hourly basis, depending upon the time spent and equipment used. Cass completed the additional work and subsequently submitted an itemized statement for $18,125.

On June 2, 1980, Cass received a check from A & B Land Company for $1,408.25, accompanied by a letter from defendant Asmussen expressing dissatisfaction with the work done and stating that the $1,408.25 was in "final settlement of the bill." In a letter to Asmussen dated June 2, 1980, counsel for Cass explained that while it accepted the $1,408.25 as partial payment on the debt, the defendants still owed $16,716.75 to Cass and that if the bill was not paid or a compromise settlement reached by June 16, 1980, a lien would be filed against the real estate and "appropriate legal action will be taken, if necessary." Cass then negotiated and deposited the check.

Cass sued for the remaining balance after A & B Land Company made no further payment. In its amended petition Cass asserted that it had fully performed its obligations under the oral agreement, entitling it to the remaining $16,716.75, plus interest since June 2, 1980. The defendants answered, claiming that the oral agreement was unenforceable as violative of the statute of frauds and that Cass had breached any contract that may have existed due to its failure to perform the work in an acceptable, workmanlike manner according to standard practices in the industry. The defendants also claimed that by cashing the check for $1,408.25, Cass had compromised any

right it may have had to pursue the additional amount. In its reply Cass contended that it had performed the work in accordance with industry standards and that it had cashed the check with full reservation of rights, as indicated in the June 2 letter to Asmussen. The parties then moved for summary judgment.

In its order issued October 29, 1984, the Antelope County District Court sustained the defendants' motions for summary judgment, overruled the plaintiff's motion, and dismissed the plaintiff's petition. The court specifically found that the parties had reached an accord and satisfaction when Cass deposited the check for $1,408.25 which the defendants had tendered in full settlement of a bona fide dispute. Further, the court found that § 1-207 does not abolish or alter the common-law principle of accord and satisfaction. The court concluded that since Cass had accepted the check for $1,408.25, it accepted it on the defendants' terms, that is, that the payment was in full satisfaction of the defendants' debt to Cass. This appeal by Cass followed.

Cass first assigns as error the district court's implicit finding that the defendants sufficiently pled accord and satisfaction as an affirmative defense. Cass asserts that the defendants' answers do not adequately allege the affirmative defense of accord and satisfaction because they fail to plead facts constituting a bona fide dispute.

Neb. Rev. Stat. § 25-811(2) (Reissue 1979) requires that a defendant's answer contain "a statement of any new matter constituting a defense . . . in ordinary and concise language . . . ." Neb. Rev. Stat. § 25-812 (Reissue 1979) further provides that a defendant may set forth in its answer as many grounds of defense as it may have. Such defenses must be "separately stated and numbered, and they must refer in an intelligible manner to the cause of action which they are intended to answer."

If a party intends to plead accord and satisfaction as a defense, the answer must contain allegations showing such intent, and the facts relied upon to establish the defense must be pled. See, *Long v. Weiler*, 395 S.W.2d 234 (Mo. App. 1965); 1 C.J.S. *Accord and Satisfaction* § 72 (1985). An answer

sufficiently pleads accord and satisfaction when it contains or presents all of the elements of an accord and satisfaction, even if it does not use the terms accord and satisfaction and even if it could have been more technically or artfully drawn. *Wood v. Yancey Brothers*, 135 Ga. App. 720, 218 S.E.2d 698 (1975). At a minimum, the defense of accord and satisfaction requires nothing more be pled than the payment and acceptance, on a mutual agreement, express or implied, of a certain sum of money in full settlement of a preexisting and previously disputed obligation. *B. & W. Engineering Co. v. Beam*, 23 Cal. App. 164, 137 P. 624 (1913).

Brennan and Asmussen filed separate answers. In paragraph 3 of Brennan's answer, he alleges that Cass breached any contract that may have existed when it failed to perform the dirt-moving work in a timely and workmanlike manner. Brennan goes on in paragraph 4 to state that Cass settled any claims it may have had against the defendants when it cashed the conditional check. Asmussen's answer is essentially the same as Brennan's.

The defendants' answers sufficiently alleged the affirmative defense of accord and satisfaction as required by §§ 25-811 and 25-812. While it is true that the language in the answers does not incorporate the precise terminology of an accord and satisfaction, it is also true that parties are not required, and in fact are not encouraged, to plead legal conclusions. See *Johnson v. Radio Station WOW, supp. op.* 144 Neb. 432, 14 N.W.2d 666 (1944), *rev'd on other grounds* 326 U.S. 120, 65 S. Ct. 1475, 89 L. Ed. 2092 (1945). It is not necessary to state a defense in any particular form so long as the facts supporting the assertion are stated. *Waite v. Samson Dev. Co.*, 217 Neb. 403, 348 N.W.2d 883 (1984).

Cass next contends that the district court erred when it determined that § 1-207 does not alter or abolish the doctrine of accord and satisfaction. At common law a debtor could tender to its creditor an amount less than that claimed by the creditor by a check that clearly indicates that it is in full settlement of a bona fide dispute. The tender is considered to be an offer by the debtor to compromise the disputed claim. The creditor may accept the conditioned offer by cashing the check or reject it by

destroying the check or returning it to the debtor. See *High-Plains Cooperative Assn. v. Stevens*, 204 Neb. 664, 284 N.W.2d 846 (1979). The actual, subjective intent of the creditor does not matter. *Les Schwab Tire Centers v. Ivory Ranch*, 63 Or. App. 364, 664 P.2d 419 (1983). If the creditor cashes a "full payment check," the creditor is agreeing to the debtor's condition that the amount tendered is in full satisfaction of the debt. See, e.g., *High-Plains Cooperative Assn. v. Stevens, supra*; *Growers Cattle Credit Corp. v. Swanson*, 184 Neb. 612, 169 N.W.2d 692 (1969).

Cass argues that § 1-207 alters the common-law principle of accord and satisfaction. Section 1-207 provides that "[a] party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice', 'under protest' or the like are sufficient." Cass and its amicus posit that this section abrogates the doctrine of accord and satisfaction and allows creditors to cash conditional checks while retaining the right to sue for any unpaid balance. They base their arguments on the language of § 1-207 and on policy considerations underlying the free flow of commerce. We conclude that the language of § 1-207 and its history, purpose, and policy do not alter the common-law principles of accord and satisfaction.

First, the language of § 1-207 does not fit the circumstances of an accord and satisfaction. Section 1-207 requires that the creditor "assents to performance in a manner demanded or offered by the other party . . . ." Where a debtor offers a compromise through an accord and satisfaction, the creditor, such as Cass, is not assenting to performance in a manner offered by the debtor; rather, the creditor is refusing to assent to the essential condition of the offer. *Les Schwab Tire Centers v. Ivory Ranch, supra*; *Jahn v. Burns*, 593 P.2d 828 (Wyo. 1979). The creditor's act of bringing suit for the unpaid balance bespeaks its intent to dissent from the debtor's conditioned offer. Cf. *Chancellor, Inc. v. Hamilton Appliance Co.*, 175 N.J. Super. 345, 418 A.2d 1326 (1980).

Further, according to its language and comments, § 1-207

appears to be confined to those transactions in which the parties intend performance along the lines of the original contract. Comment 1 to § 1-207 states that the section "provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute . . . ." Similarly, Comment 2 provides that § 1-207 "merely provides a specific measure on which a party can rely as he makes or concurs in *any interim adjustment in the course of performance.*" (Emphasis supplied.)

This language suggests that § 1-207 was not designed to alter the law of accord and satisfaction with respect to conditional checks but, rather, was intended to allow parties to a contract to proceed with performance without risking waiver of their rights. In other words, "the provision was designed to deal with problems of waiver, election of remedies, and estoppel rather than with attempted accord and satisfaction." McDonnell, *Purposive Interpretation of the Uniform Commercial Code: Some Implications for Jurisprudence*, 126 U. Pa. L. Rev. 795, 828 (1978).

As discussed earlier, an accord and satisfaction involves a *new* contract, not the contemplated performance of the original contract. By its specific terms § 1-207 applies not in situations involving a conditional check but, rather, in circumstances where, for example, a buyer makes an installment payment under a contract which it believes the seller has breached, or where a buyer accepts delivery of goods that it believes do not conform to the contract, or where the seller goes ahead with its performance in spite of anticipatory repudiation by the buyer. One commentator has put it this way:

> [S]ection 1-207 was meant to apply only where one party's acquiescence in the other's performance or demand might, *by operation of law*, result in a waiver or other basis for prejudicing his rights; section 1-207 would give the acquiescing party a means of protecting himself against having to pay an often unfair penalty for turning the other cheek. Under this interpretation, section 1-207 would not apply where the challenge was *expressly* communicated, as in a check offered in satisfaction of an obligation on a clear take-it-or-leave-it basis.

Rosenthal, *Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code*, 78 Colum. L. Rev. 48, 63-64 (1978). See, also, Comment, *Does U.C.C. Section 1-207 Apply to the Doctrine of Accord and Satisfaction by Conditional Check?* 11 Creighton L. Rev. 515 (1977); Comment, *Accord and Satisfaction: Conditional Tender by Check Under the Uniform Commercial Code*, 18 Buffalo L. Rev. 539 (1969). Permitting a creditor to reserve its right to sue under § 1-207 would not result in performance along the lines of the contract as contemplated by the statute. Rather, it would allow a creditor to disregard the specific terms of the new contract in its attempt to enforce those of the old. The plain language of the statute forecloses such a result. We have repeatedly held that in considering the meaning of a statute, we will, if possible, discover the legislative intent from the language of the statute and give it effect. We will not read a statute as if open to construction as a matter of course. *Uttecht v. Norwest Bank of Norfolk*, 221 Neb. 222, 376 N.W.2d 11 (1985). Cass may not "have its cake and eat it too" under the plain language of § 1-207. See, e.g., *Pillow v. Thermogas Co. of Walnut Ridge,* 6 Ark. App. 402, 644 S.W.2d 292 (1982); *Eder v. Yvette B. Gervey Interiors, Inc.,* 407 So. 2d 312 (Fla. App. 1981); *Dep't of Fisheries v. J-Z Sales Corp.,* 25 Wash. App. 671, 610 P.2d 390 (1980).

We, finally, note that Neb. U.C.C. § 1-103 (Reissue 1980) and its official Comment state that common-law principles of law and equity are not displaced by particular code provisions unless done so specifically. Nowhere in § 1-207 is there reference to the statute's displacing the common-law doctrine of accord and satisfaction.

That § 1-207 was designed to apply in circumstances unrelated to an accord and satisfaction is also evident in the history of the statute. Nebraska's provision is as originally proposed by the American Law Institute and the National Conference of Commissioners on Uniform State Laws, and it is identical to § 1-207 of the 1950 proposed final draft of the U.C.C. At that time § 1-207 coexisted with another provision of the code, U.C.C. § 3-802(3) (Official Draft 1952), that codified and expanded the doctrine of accord and satisfaction.

Section 3-802(3) provided: "Where a check or similar payment instrument provides that it is in full satisfaction of an obligation the payee discharges the underlying obligation by obtaining payment of the instrument unless he establishes that the original obligor has taken unconscionable advantage in the circumstances." Section 3-802(3) expanded the common law by permitting accord and satisfaction when the obligation was undisputed and liquidated. Because the section might have been "open to abuse," it was deleted in the 1957 official draft. American Law Institute, National Conference of Commissioners on Uniform State Laws, Supplement 1 to the 1952 Official Draft of Text and Comments of the Uniform Commercial Code 25 (1955); U.C.C. § 3-802 (1957). Thus, accord and satisfaction was left entirely to the common law.

The significance of § 3-802(3) is that it existed entirely without reference to § 1-207. The Comments to neither section referenced the other. See U.C.C. §§ 1-207 and 3-802(3) (Official Draft 1952). Similarly, the Comment to U.C.C. § 3-112(1)(f) (Official Draft 1952), which speaks of the negotiability of checks tendered as payment in full, omits reference to § 1-207 and instead cross-references only § 3-802(3). This background indicates that the drafters of §§ 1-207 and 3-802(3) probably did not intend to write overlapping sections regarding accord and satisfaction but, rather, conceived of them as unrelated. See, Rosenthal, *supra* at 58-63; Case Comment, *Accord and Satisfaction Under Uniform Commercial Code Section 1-207: Scholl v. Tallman,* 38 Ohio St. L.J. 921 (1977). See, also, *Chancellor, Inc. v. Hamilton Appliance Co.,* 175 N.J. Super. 345, 418 A.2d 1326 (1980); *Brown v. Coastal Truckways,* 44 N.C. App. 454, 261 S.E.2d 266 (1980). We conclude that, like its language, the history of § 1-207 simply does not comport with the appellant's belief that the statute abrogates the common-law doctrine of accord and satisfaction.

Finally, the appellant and its amicus make much of policy considerations that should be weighed in deciding this issue. As stated in the amicus' brief at 4:

The vast array of circumstances under which a "conditional check" may be issued leads Amicus to

seriously question the continued validity of the doctrine of accord and satisfaction. In today's world of ever-increasing commercial transactions, marked by a corresponding increase in the use of checks for account payments, merchants no longer have the luxury of closely scrutinizing each and every check that comes into their possession. Disregard of the provisions of *Neb. U.C.C.* § 1-207, and exclusive application of the doctrine of accord and satisfaction to "conditional check" transactions will open the door to legal blackmail of creditors and will greatly increase the likelihood of overreaching and unscrupulous debtors looking for a "freebie", to routinely make partial payments on the condition that they be accepted as full settlement of their account.

Because the common-law doctrine contains sufficient protections for creditors from overreaching debtors, we do not share the appellant's concern about the unfairness of accord and satisfaction. First, accord and satisfaction applies only in circumstances where the debt is unliquidated and in dispute. Second, the dispute must be in good faith. See 6 A. Corbin, Corbin on Contracts §§ 1276-1292 (1962). Third, the creditor must have reasonable notice that the amount is in dispute and that the check is tendered in full satisfaction of the debt. Sufficient notice is normally a question of fact. *Rosenberg v. Lincoln Fed. Sav. & Loan Assn.*, 219 Neb. 689, 365 N.W.2d 809 (1985). Fourth, where a creditor mistakenly sends a bill for an amount less than what is actually owed, payment of that amount will not operate as full satisfaction, even if the debtor endorses the check "for balance in full." *Whitt v. Leath*, 213 Ala. 309, 104 So. 796 (1925). Finally, as with any other contract, an accord can be set aside or reformed and enforced on grounds of fraud or mistake. 6 A. Corbin, *supra* § 1292. Creditors are well protected under the common law.

The appellant's construction of § 1-207 would also lead to an unduly complicated situation in which debtors would have to add to the customary term "payment in full" a further statement that endorsement of the check also constitutes an agreement to forgo the reservation of rights under § 1-207. J. White & R. Summers, Handbook of the Law Under the

Uniform Commercial Code § 13-21 (2d ed. 1980). A new "battle of the forms" would thus be created. See Rosenthal, *Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code*, 78 Colum. L. Rev. 48, 71-74 (1978). Obviously, those with the most to lose would be those least informed regarding the formalities and intricacies of the U.C.C. This result is inconsistent with the code's purpose of "simplify[ing] [and] clarify[ing] . . . the law governing commercial transactions," Neb. U.C.C. § 1-102(2)(a) (Reissue 1980), and it fails to promote the policy of permitting "the continued expansion of commercial practices through . . . agreement of the parties," § 1-102(2)(b). Finally, the appellant's interpretation of § 1-207 negates or certainly complicates a convenient and valuable means of settling disputes informally.

We decline to tamper with a principle that was meant to be left alone. The language, history, and policy of § 1-207 do not support the appellant's interpretation of the statute. Accordingly, the trial court was correct in its determination that § 1-207 does not abrogate the common-law doctrine of accord and satisfaction.

Cass finally assigns as error the district court's finding that no issue of genuine fact existed regarding the defense of accord and satisfaction. Specifically, Cass claims that a genuine issue of material fact existed with respect to whether there was a bona fide dispute. In its brief, Cass bases its argument on the wide variance between the amount it claims and the amount the defendants paid. This fact alone, Cass argues, is enough to raise a genuine issue of material fact and make summary judgment inappropriate.

A party is entitled to summary judgment if the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, that the ultimate inferences to be drawn from those facts are clear, and that the moving party is entitled to judgment as a matter of law. *Gilbert v. City of Tekamah,* 221 Neb. 614, 379 N.W.2d 758 (1986). The burden is on the movant to show that no issues of material fact exist, and unless that party can conclusively do so, the motion must be overruled. *Id.* In considering a motion for summary judgment, the court

examines the evidence, not to decide any issue of fact, but to discover if any real issue of fact exists. *Allan v. Massey-Ferguson, Inc.*, 221 Neb. 528, 378 N.W.2d 664 (1985). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn therefrom. *Pfeifer v. Pfeifer*, 195 Neb. 369, 238 N.W.2d 451 (1976). Finally, the requirements to sustain the motion are the same whether one party or both parties have moved for summary judgment. *Juergens & Anderson v. Redding*, 198 Neb. 289, 252 N.W.2d 291 (1977).

In its amended petition Cass stated that it had fully performed its obligations under the contract. In their separate answers the defendants alleged that Cass had breached the agreement by failing to perform the work in a workmanlike and timely manner. The defendants also claimed that Cass had waived any right it may have had to recover the balance it now claims when it cashed the check for $1,408.25. In its reply Cass countered that it had performed the work in a workmanlike and timely manner and that it had cashed the check with full reservation of rights.

At the October 1, 1984, hearing on the parties' cross-motions for summary judgment, all parties offered the same three exhibits in support of their motions. Exhibit 1 is an affidavit of the attorney who notified the defendants in the June 2, 1980, letter of Cass' acceptance of the check as partial payment. Exhibit 2 is the affidavit of defendant Brennan, in which he asserts that the sum of $1,408.25 was paid "for the reason that no additional work having a value over and above the sums of [$1,408.25] had been authorized by A & B Land Co. Furthermore, no such work had been performed satisfactorily, properly or in a workmanlike manner by Plaintiff." Exhibit 3 is defendant Asmussen's affidavit, in which he states that he never made any agreement whatsoever with Cass and that in early May of 1980, A & B Land Company issued a check to Cass in full settlement of the account. Exhibit 3 also contains Asmussen's letter to Cass in which he states that "we were not fully paid on our crop share, due to the faulty dirt work. We do

not feel that we should have had any additional charges incurred on the original dirt work done in 1979."

That a dispute existed between Cass and the defendants is obvious from the record; that the dispute was bona fide, however, is not so clear. "Bona fide" literally means "good faith"; "honestly, openly, and sincerely; without deceit or fraud." Black's Law Dictionary 160 (5th ed. 1979). "Good faith" has been defined as "an intangible and abstract quality with no technical meaning or statutory definition." *Doyle v. Gordon*, 158 N.Y.S.2d 248, 259 (1954). It encompasses, among other things, an honest belief, the absence of malice, and the absence of design to defraud or to seek an unconscionable advantage: "An individual's personal good faith is a concept of his own mind . . . and, therefore, may not conclusively be determined by his protestations alone." *Id.* at 260. Neb. U.C.C. § 1-201(19) (Reissue 1980) defines good faith as honesty *in fact* in the conduct or transaction concerned.

A bona fide dispute serves as the necessary consideration underlying the new agreement in an accord and satisfaction. This form of consideration is based on the theory that if the amount due is disputed or unliquidated, the forbearance from suit and the willingness to compromise is in itself valuable consideration, even if an ultimate factual showing may later establish that the claim or defense was invalid in whole or in part. Restatement (Second) of Contracts § 74 (1981).

With regard to good faith in an accord and satisfaction, one court has defined it as follows:

> An indispensible element contributing to the establishment of this defense consists in an actual and substantial difference of opinion. One must assert the validity of his claim and the other must in good faith deny all or part of it. His denial cannot be fabricated for use as a pretext to evade the discharge of an obligation. Disclaimer must be *bona fide* and based upon real faith that the demand is not meritorious.

*Schuttinger v. Woodruff*, 259 N.Y. 212, 216, 181 N.E. 361, 362 (1932). Another court put it this way: "A person cannot create a dispute sufficient as a consideration for a compromise by a mere refusal to pay an undisputed claim. That would be

extortion, and not compromise. There must in fact be a dispute or doubt as to the rights of the parties honestly entertained." *Demars v. Musser-Sauntry Land Co.*, 37 Minn. 418, 419, 35 N.W. 1, 2 (1887). See, also, *Kelly v. David D. Bohannon Organization*, 119 Cal. App. 2d 787, 260 P.2d 646 (1953).

In *Connecticut Printers v. Gus Kroesen, Inc.*, 134 Cal. App. 3d 54, 184 Cal. Rptr. 436 (1982), the court held that although § 1-207 does not abrogate common-law accord and satisfaction, that doctrine applies only to *bona fide* disputes. Because the record could not support the lower court's determination that a bona fide dispute existed, the court reversed the decision for determination of this fact question.

We believe that summary judgment was inappropriate in the case at hand. The scant record reveals no pleadings, affidavits, or depositions introduced by either party which conclusively establish the lack of a genuine issue of material fact with respect to the bona fide nature of the dispute.

On a motion for summary judgment, the moving party bears the burden of proving that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. The movant may discharge this burden by showing that if the case proceeded to trial, the opponent could produce no competent evidence to support a contrary position. *Hanzlik v. Paustian*, 211 Neb. 322, 318 N.W.2d 712 (1982).

> "A prima facie showing by the movant for summary judgment—*i.e.*, the production of enough evidence to demonstrate such party's entitlement to a judgment if evidence were uncontroverted at trial—shifts the burden of producing evidence to the party opposing the motion. Summary judgment should be granted to the movant unless the opposing party offers competent evidence . . . that there is a genuine issue as to a material fact."

*Id.* at 328, 318 N.W.2d at 716 (quoting *Nader v. de Toledano*, 408 A.2d 31 (D.C. 1979)).

Here, the record indicates that while the parties presented evidence of a dispute in their motions for summary judgment, none presented evidence of a bona fide dispute, or in Cass' case, the lack thereof. Thus, the movants failed to meet their burdens of establishing a prima facie showing that no genuine issues of

material fact existed. The district court's order granting summary judgment to the defendants was in error. Accordingly, the cause is reversed and remanded for trial.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

GRANT, J., concurring in part and in part dissenting.

I concur in part and dissent in part. I agree with the court's opinion in every respect except in the court's holding that while defendants "presented evidence of a dispute in their motions for summary judgment, none presented evidence of a bona fide dispute . . . ." I believe that the requirements of Neb. Rev. Stat. § 25-1332 (Reissue 1979) have been met and that the "pleadings . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The "material fact" in question here is whether there was a bona fide dispute between plaintiff and defendants—not the details of, or the validity of, the contentions of the two sides of that dispute. The definition of bona fide dispute, as set out in *Doyle v. Gordon*, 158 N.Y.S.2d 248, 259-60 (1954), and cited in the majority opinion, is expanded in the succeeding sentence in the *Doyle* opinion at 260: "The existence of defendants' good faith as a substantive fact, therefore, necessitates an examination and evaluation of external manifestations as well."

I agree with the statement in *Schuttinger v. Woodruff*, 259 N.Y. 212, 216, 181 N.E. 361, 362 (1932), as set out in the majority opinion, that "[o]ne [party] must assert the validity of his claim and the other must in good faith deny all or part of it." I also agree with the statements from *Demars v. Musser-Sauntry Land Co.*, 37 Minn. 418, 419, 35 N.W. 1, 2 (1887), that a denial of a claim must not amount to "extortion" or a "mere refusal to pay an undisputed claim."

The pleadings and affidavits in this case, however, do not lead to such characterizations as the above. In its amended petition plaintiff stated that it agreed with defendants to do certain dirt-moving work for $5,600; that it overran such bid by $1,685, which it credited to defendants on the $5,600 bid; and that it then contracted to do additional work at an hourly rate.

Plaintiff attached a detailed bill which shows hourly work done between March 8 and 18, 1980, in a total sum of $21,280, and allowing credits. In an affidavit filed in connection with the summary judgment motion, plaintiff's attorney stated that plaintiff had accepted defendants' check in the amount of $1,408.25 "as a partial payment," and admitted that the check had been tendered by defendants in full payment.

In his answer and in his affidavit, defendant Asmussen alleged the plaintiff's work was unsatisfactory, and incorporated a letter from defendant Asmussen, acting for both defendants, to plaintiff, stating in part:

> As I explained, we were not fully paid on our crop share, due to the faulty dirt work. We do not feel that we should have had any additional charges incurred on the original dirt work done in 1979.

> Due to the fact that we were short #2025 bushels of corn because of severe slopes hindering the operation of the irrigation equipment we feel that you owe us $4191.75.

> You did bid us $5600 to do the water drainage work and agreed to level the slopes as per your original agreement in 1979.

> I am enclosing a check for $1408.25 as final settlement of the bill.

In my opinion there is in this case far more than "a mere refusal to pay," and there is no showing of any "extortion" by defendants. In specific detail, the position of defendants is that plaintiff so performed the work it agreed to do that defendants suffered a loss of 2,025 bushels of corn on account of "faulty dirt work." Plaintiff admits it overran its first bid by $1,685, but alleges that it did additional work on an hourly basis agreed upon with defendants. Defendants say "au contraire," and that any additional work was done to correct the work plaintiff had contracted to do in the first place. I therefore cannot agree with the statement in the majority opinion that "[a]pparently, the parties orally agreed that the additional work would be billed on an hourly basis . . . ." That is the crux of the dispute.

In my opinion there are numerous "external manifestations" of a dispute which, on examination, shows the undisputed existence of the fact in question—that there is a bona fide

dispute. Nothing in the record suggests any "mere refusal to pay," or any "extortion," but affirmatively shows defendants' firm position in an ordinary business dispute.

I would affirm the judgment of the trial court in its entirety. BOSLAUGH, J., joins in this concurrence and dissent.