DON ANSTINE, APPELLANT, V. REX BRIGGS ET AL., APPELLEES.

215 N. W. 2d 878

Filed March 14, 1974. No. 39224.

Blevens, Bartu & Blevens, for appellant.

Barlow, Watson & Johnson and Steven J. Flodman, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, Mc-COWN, NEWTON, and CLINTON, JJ., and HASTINGS, District Judge.

SPENCER, J.

Plaintiff appeals from the sustaining of motions for a directed verdict and the dismissal of his petition for damages incurred while employed by the defendants. We affirm.

In determining whether a party is entitled to a directed verdict, the evidence must be considered most favorably to the other party. Every controverted fact must be resolved in favor of the nonmoving party and he is entitled to the benefit of every reasonable inference that may be drawn therefrom. Hacker v. Perez (1971), 187 Neb. 485, 192 N. W. 2d 166. We briefly summarize the facts herein in accordance with those principles.

Defendants are members of a joint venture engaged in cattle feeding. Their operation is substantially mechanized. Plaintiff, who was a 17-year-old high school junior, commenced work as a farm hand on a part-time basis in May of 1969. When school adjourned he became a full-time employee. His primary duty consisted of loading and delivering feed to cattle. Plaintiff's previous work experience had been limited. He had never driven a tractor but was familiar with motorized vehicles. He had driven and repaired automobiles since the age of 15.

The process on defendant's premises utilized two-wheeled feed wagons which were coupled to tractors. Various ingredients were loaded into these wagons and then delivered to numerous pens of cattle. The feed wagons were equipped with warning devices consisting of beepers and flashing lights set off electronically when activated by a self-contained scale. These devices indicated to the operator when the proper amount of each

ingredient had been loaded. Forty to fifty loads of feed were distributed each day by plaintiff and other employees. Plaintiff had successfully completed approximately 600 such operations prior to the day he was injured.

The feed elevator was equipped with overhead bins, side bins, a pit, and mechanized devices for the movement of grain. It was open on both the north and south ends so as to allow the tractors to pull the feed wagons under the respective bins and through the elevator. The loading of the wagons was controlled by setting the electronic scale on the wagon.

The driver of a feed rig would stop in the elevator under the first overhead bin and load corn. This procedure required approximately 5 minutes. He would then move the wagon forward to the next bin where another product would be loaded. Plaintiff and other drivers were required to dismount from their tractors at each loading station in order to properly adjust the scale devices on their respective feed wagons. The drivers also operated the machinery necessary to load their wagons at each station. Whatever instruction plaintiff received in the operation was given orally. Thereafter it was a matter of learning through trial and error.

On June 24, 1969, at approximately 11 a.m., plaintiff had finished loading operations inside the elevator. He removed his tractor and wagon, parked them outside, and returned to the elevator to fill one of the overhead corn bins that had become empty while he was loading. As the bin was filling, another employee entered the elevator with his feed wagon and commenced loading corn.

While plaintiff and this other employee were visiting plaintiff heard certain sounds which indicated to him that corn being elevated by the mechanized leg might be backing up. Plaintiff and the other employee started off in different directions. Nothing was said but plaintiff assumed the other employee intended to turn off the corn

flowing into his wagon. Plaintiff had been instructed to watch out for the elevator leg plugging up but could recall no specific instructions concerning the proper method to investigate the difficulty. His customary method was to look down into a pit located approximately in the center of the elevator. If he detected a malfunction after this inspection he would then turn off the machinery.

Plaintiff went to the pit area, bent over, and looked down into the pit. He could have been on one knee. He was over the grate which covered the pit, with his body behind the tractor and 1 or 2 feet from the front of the tire on the west side of the feed wagon. While he was in this position the other employee moved the tractor and wagon forward. The wheel of the feed wagon passed over plaintiff's leg causing substantial injury.

The accident occurred within approximately 5 minutes after the other employee entered the elevator. Plaintiff knew from prior experience that the other employee would move his equipment forward after completing the loading operation, which would require approximately 5 minutes. He did not indicate to the other employee that he intended to position himself in front of the wheel of the wagon nor that he was examining the equipment. He did not hear the warning buzzer on the wagon but it was noisy in the elevator when the equipment was operating. He stated that in a noise situation he would rely on the warning lights more than the buzzer. When he moved to the pit area he did not check the lights nor the needle on the scale of the wagon. All he had on his mind was checking the equipment.

Although plaintiff's petition alleges 10 specific acts of negligence, the gist of his action is that the working environment was dangerous or unsafe and defendants failed to discharge their duties of supervision, inspection, and warning relating to that work environment. There was no allegation that the other employee was negligent. Plaintiff does not contend that either the occupation in-

volved or the instrumentalities employed were inherently dangerous.

The record is devoid of any proof of negligence and causation on the part of defendants sufficient to submit plaintiff's case to a jury. Viewing the evidence in a light most favorable to plaintiff, we conclude the trial court was correct in directing a verdict in favor of defendants. Plaintiff's age and experience was such that he should have understood and appreciated that as he bent down in front of a wheel he could be injured if the vehicle moved forward. This clearly was not something an employer would expect an employee to do. A failure to warn or instruct in such circumstances is not negligence. In Russo v. Swift & Co. (1939), 136 Neb. 406, 286 N. W. 291, we said: " 'It is well settled that a duty rests on an employer to warn his employees of defects or dangers not apparent which may arise in the course of the employment, which the employer knows or ought to know about, and which he has reason to believe the employee does not know and will not discover in time to protect himself.' * * * 'The master is not compelled to foresee and guard against an accident which reasonable and prudent men would not expect to happen, and where an injury to a servant could not have been anticipated, a failure to take precautionary measures is not negligence on the part of the master for which he is liable to the servant.' "

Assuming, however, that in some fashion defendants might be held negligent, plaintiff still could not recover in this action. Plaintiff knew that after the feed wagon had been filled at its first stop it would move forward to the next. He was aware that considerable of the time necessary to complete the loading process at that bin had elapsed. Yet, without saying anything to the other employee or checking as to what he might be doing, he placed himself between the tractor and the feed wagon in a position of extreme danger if the wagon

should be moved. Plaintiff at 17 had sufficient background and experience to appreciate the obvious danger.

We said in Runge v. Travis (1965), 178 Neb. 562, 134 N. W. 2d 291: "One who is capable of understanding and discretion and who fails to exercise ordinary care and prudence to avoid defects and dangers which are open and obvious is negligent or contributorily negligent."

There follows from the evidence the legal conclusion that contributory negligence in comparison with the negligence of defendants, if any, bars recovery.

The judgment should be and is affirmed.

AFFIRMED.