Glen L. Pfeifer, appellant, v. Sylvester Pfeifer et al., appellees.

238 N. W. 2d 451

Filed February 5, 1976. No. 40100.

Kirby, Duggan & McConnell, for appellant.

Jewell, Otte, Gatz, Collins & Domina, for appellees.

Heard before Spencer, Newton, and Clinton, JJ., and Hendrix and Buckley, District Judges.

Buckley, District Judge.

Plaintiff, Glen L. Pfeifer, appeals from a summary judgment dismissing his tort action for damages.

The defendants Sylvester, Donald, and Pat Pfeifer, plaintiff's father and two brothers, respectively, are partners doing business as Sylvester Pfeifer & Sons. They commercially operated a picker-sheller combine. Pat brought the combine to Glen's farm to pick his corn. Shortly after the picking began, the combine broke down

and was taken into a quonset building for attempted repairs.

Glen and Pat went onto a platform on the top of the combine. While Pat was in the process of loosening or removing a safety shield in order to get at the source of the trouble, a large flat washer fell into the shelled corn in the bin. Concerned over the effect of the washer running through a machine or being swallowed by an animal, Glen eventually left the platform and went to the bottom of the bin to try and retrieve the washer. Pat, unaware of this, continued to search for the source of the trouble.

The unloading mechanism of the combine consisted of a horizontal auger at the bottom of the bin, which fed the corn into a second vertical auger inside the bin, which in turn delivered the corn to a third horizontal auger which delivered the corn to the truck. The auger at the bottom of the bin was exposed and in the area of the dropped washer.

While Pat continued working on the platform, Glen twice reached into the bin with his left arm but couldn't reach the washer. He then switched to his right arm for a third attempt. While he was doing this, Pat, suspecting that one of the augers was broken, went down the platform to the cab, reached in, and engaged the gear which activated the auger in the bottom of the bin, which in turn caught Glen's right arm, resulting in its ultimate amputation.

No reasons were given by the trial court in sustaining the motion for summary judgment. The evidence consists solely of the deposition testimony of Glen and Pat. Defendants contend that the undisputed facts show that plaintiff's contributory negligence was sufficient to bar recovery as a matter of law. Defendants also contend that plaintiff assumed the risk of his injury as a matter of law, but this affirmative defense was not pled, and will not be considered.

The principles of law involved are set out in Green v.

Village of Terrytown, 189 Neb. 615, 204 N. W. 2d 152:
The burden is upon the party moving for a summary
judgment to show that no issue of fact exists, and unless
he can conclusively do so, the motion must be overruled.
Upon a motion for summary judgment, the court ex-
amines the evidence, not to decide any issue of fact, but
to discover if any real issue of fact exists. In consider-
ing a motion for summary judgment, the court views
the evidence in the light most favorable to the party
against whom it is directed giving to that party the
benefit of all favorable inferences that may reasonably
be drawn therefrom.

It is true that the testimony of Glen and Pat as to
how the accident happened is essentially without dispute.
Glen was generally familiar with the combine, but had
never repaired it. When the washer fell into the bin,
Glen immediately told Pat he would go down and get it
but Pat said, "just let it go for now." It was less than
5 minutes later when Pat engaged the gear without
ever realizing that Glen eventually had left the platform
and was trying to retrieve the washer. As Pat said
regarding his lack of effort to see where Glen was, "I
just forgot." From under the bin, Glen could not see
Pat up on the combine, but Pat, with little effort, could
have looked down and seen the bottom of the bin, the
auger, and Glen alongside. The motor of the combine
was running throughout, but Pat gave no warning of
his intention to engage the gear.

As is so often the case in tort actions, the inferences
that may be drawn from established facts go to the
heart of the resolution of the issues. Unless these in-
ferences are conclusively established, a summary judg-
ment cannot be granted. Are the inferences here con-
clusively established or could reasonable minds differ as
to: (1) Whether Glen had a duty to tell Pat when he
left the platform to retrieve the washer. (2) Whether
Glen should have looked to see exactly where Pat was
and what he was doing before reaching into the bin.

(3) Whether Pat should have looked for Glen and, noting his absence from the platform, realized he might be down at the bin retrieving the washer. (4) Whether Pat should have given a warning to Glen of his intention to engage the gear.

We find that reasonable minds could differ as to these inferences, and that the defendants accordingly are not entitled to summary judgment as a matter of law. As we said in Green v. Village of Terrytown, *supra*: "The primary purpose of the summary judgment statute is to pierce sham pleadings and to dispose of, without the necessity and expense and delay of trial, those cases where there is no genuine claim or defense. Clark on Code Pleading (2d. Ed.), § 88, p. 557. Properly used it can accomplish that purpose. It can, however, have the opposite effect. In tort cases of the kind where reasonable minds may differ as to whether an inference of negligence is to be drawn from the given set of facts, it can have no application. It is difficult to use in many tort cases."

The defendants rely on several farm-accident cases decided by this court, but in each one the trial court sustained defendant's motion for a directed verdict. This court said in Johnson v. Metropolitan Utilities Dist., 176 Neb. 276, 125 N. W. 2d 708: "A motion for a summary judgment is not a substitute for a demurrer or a motion for a directed verdict. We do not determine at this time that the plaintiff's evidence, whatever it will be, will present a jury question. We determine only that the record at this time does not show conclusively that there is no issue of fact in this case."

The judgment is reversed and the cause is remanded.

REVERSED AND REMANDED.

CLINTON, J., dissenting.

I respectfully dissent. The majority opinion correctly points out that there is no essential dispute in the evidence. The opinion is, however, I believe, incorrect in suggesting that upon trial there could be additional evi-

dence which might affect the inferences which a reasonable mind might draw from the undisputed facts. Such an assumption is unrealistic. The plaintiff and the defendant Pat were the only witnesses with knowledge of the facts. This knowledge was thoroughly explored in the two depositions. If the plaintiff had further pertinent evidence he could have introduced it by affidavit or otherwise in opposition to the defendants' motion for summary judgment. A photograph or photographs might more clearly illustrate the oral evidence, but could not in any essential way change it.

The majority opinion lists four propositions, the inferences as to which it is stated reasonable minds might differ. However, in my judgment, the one proposition which is critical and as to which reasonable judicial minds ought not to differ, if the principle of stare decisis is to be given credence, is not dealt with.

That proposition is that the plaintiff was, as a matter of law, guilty of contributory negligence more than slight proximately contributing to his injury. That inference flows from the following: Plaintiff was 25 years of age. He was a farmer. He was familiar with the combine mechanism. He knew or ought to have known that the engine was running. He knew or ought to have known that if, while the engine was running, the clutch, by which the auger was controlled, was intentionally or accidentally moved to the operating position, the auger would rotate. He knew or ought to have known that if his arm or hand were in the auger channel when this should occur serious personal injury was inevitable. Nonetheless, immediately after he suggested to the defendant Pat that he (plaintiff) would attempt to retrieve the lost washer and Pat had said, "let it go for now," he went ahead, without informing Pat, in his efforts to find the washer and in so doing placed his arm and hand in the auger channel in the bottom of the bin. At that time he knew or ought to have known that the auger was operational. He did

this without informing Pat. He did this at a time when, under the evidence, he should have realized that Pat might, in order to test whether the repairs had been successful, shift the clutch which controlled the auger. It seems clear from the record the plaintiff was guilty of negligence contributing to his injury and that that negligence was of a kind and measure which was more than slight.

Accidents of this type causing personal injury are a frequent occurrence. So frequent, in fact, that manufacturers now customarily print upon machines of various types, for example, snowblowers, warnings which caution operators against working on or attempting to dislodge clogged material from working parts while the engine is running. These are cautions against relying merely upon disengagement of some type of clutch control. It is the very fact that such controls may inadvertently or intentionally be engaged that makes so extremely hazardous working upon such machines while the motor is running.

In principle this case is indistinguishable from Anstine v. Briggs, 191 Neb. 489, 215 N. W. 2d 878; and Fritchley v. Love-Courson Drilling Co., Inc., 177 Neb. 455, 129 N. W. 2d 515. In the first case we affirmed the verdict for the defendants. Plaintiff in that case was a 17-year-old youth employed at a feed yard and he had "placed himself between [a] tractor and [a] feed wagon in a position of extreme danger if the wagon should be moved." We held he was guilty of contributory negligence as a matter of law. In the second case, the plaintiff was, in the course of his employment, required to climb an iron bar ladder on the side of a water tank in an oil field. One of the rungs of the ladder was loose at one end. Plaintiff was aware of this. He climbed the ladder. The rung swung out slightly, causing him to fall. We there said that he was guilty of contributory negligence as a matter of law.

If the principle of stare decisis is to be given credence,

we ought to follow it in applicable cases. The two cases cited are in principle indistinguishable from the one at hand. If anything, the plaintiff's negligence in this case is greater than that of the plaintiffs in the cases cited.

I would affirm the judgment of the trial court.

NEWTON, J., joins in this dissent.