RANDALL A. MCFARLAND, BY AND THROUGH HIS FATHER AND NEXT FRIEND, DONALD E. MCFARLAND, SR., APPELLANT, V. PATRICK O. KING ET AL., APPELLEES.

341 N.W.2d 920

Filed December 30, 1983. No. 82-661.

Dale Romatzke of Kelley, Wallace, Scritsmier, Moore, Romatzke & Byrne, P.C., for appellant.

Stephen W. Kay of Kay & Kay, for appellees.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and NORTON, D.J., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

This was a suit against Patrick O. King (King) and his employer, Missouri Valley Construction Company, to recover for personal injuries sustained when Randall A. McFarland (Randall), age 15 years, collided with King's pickup truck while riding his bicycle. Defendants' separate motions for summary judgment were sustained. Plaintiff appeals. We affirm.

We first discuss the issues of King's liability, Randall's contributory negligence, and causation. King, Randall, two eyewitnesses, and two accident investigating officers testified by deposition.

There is no substantial dispute of these facts. The accident occurred about 5:45 p.m. on August 14, 1979, on Rodeo Road, North Platte, Nebraska, in the business district at a point west of the Ash Street intersection. Rodeo Road runs east and west, with two lanes of traffic each way; there are stop signs on Ash Street at the intersection. There is a private driveway on the north side of Rodeo Road; its west edge is about 68 feet west of the center of the intersection. Leland Emken had stopped his 12-foot-long pickup truck in that driveway, heading south and preparing to exit into the street; his pickup was across the sidewalk, with the front of the pickup about 7 feet from the edge of Rodeo Road. Emken and his wife, Jennie, a passenger, both observed Randall pedaling his 10-speed bicycle eastward on

the sidewalk west of their pickup; he looped around the rear of the pickup, came along the left side of the truck and exited southeasterly onto Rodeo Road without slowing, stopping, or looking for traffic; the view to the east was unobstructed; they described Randall's speed as fast. Randall looked west at all times; he continued to look west and pedaled his bicycle up to the time of impact with King's truck. The point of impact was about 25 feet from the front of Emken's truck. Randall never looked in the direction of King.

King was driving his pickup truck west on Rodeo Road in the inside lane at about 30 to 32 m.p.h.; he was observing traffic ahead, and he saw Emken's truck about the time that he left the intersection; he never saw Randall until the bicycle was 4 feet from his truck. The impact was on the front side of the right front fender; the headlight and windshield were broken. Randall received severe head injuries; he has no recollection of the events.

A party is entitled to summary judgment if (1) he can show there is no genuine issue of material fact, and (2) where, under the facts, he is entitled to judgment as a matter of law. *Green v. Village of Terrytown*, 189 Neb. 615, 204 N.W.2d 152 (1973). See Neb. Rev. Stat. § 25-1332 (Reissue 1979).

"In considering a motion for summary judgment, the court views the evidence in the light most favorable to the party against whom it is directed giving to that party the benefit of all favorable inferences that may reasonably be drawn therefrom." *Pfeifer v. Pfeifer*, 195 Neb. 369, 371, 238 N.W.2d 451, 453 (1976).

These rules apply to the duties of Randall and King.

"The driver of a vehicle emerging from . . . [a] driveway . . . shall stop such vehicle immediately before driving onto a sidewalk . . . extending across such . . . driveway . . . . Before entering the highway, he shall yield the right-of-way to all vehicles

approaching on such highway." Neb. Rev. Stat. § 39-638 (Reissue 1978). This statute applies to bicycle riders (Neb. Rev. Stat. § 39-686 (Reissue 1978)); and in *Sacca v. Marshall*, 180 Neb. 855, 146 N.W.2d 375 (1966), its provisions were held to apply to a 14-year-old boy.

A driver emerging from a driveway has the duty to look for approaching traffic and to see what is in plain sight within the radius which denotes danger. *Laux v. Robinson*, 195 Neb. 601, 239 N.W.2d 786 (1976).

"A driver [of a vehicle] . . . must maintain such lookout and control as will avoid collision with others exercising due care. He has a right to assume that others, children and adults, will do likewise." *Zoucha v. Northwestern Bell Tel. Co.*, 176 Neb. 408, 414, 126 N.W.2d 220, 224 (1964); *Bear v. Auguy*, 164 Neb. 756, 83 N.W.2d 559 (1957).

" 'A vehicle traveling on a highway at a reasonable and lawful rate of speed is not required to slow down or stop upon the appearance of a vehicle about to enter the highway from a private road until it reasonably appears that its driver is not going to yield the right-of-way.' " *Laux v. Robinson, supra* at 604, 239 N.W.2d at 788; *Kubo v. Fish*, 152 Neb. 74, 40 N.W.2d 270 (1949).

Appellant contends that since Randall looked to the west, there was an inference that he also looked east. This is not reasonable, considering the uncontradicted evidence of the two eyewitnesses to the contrary and the impact circumstance that Randall continued to pedal his bicycle up to the time of impact. Further, appellant is confronted with the rule that Randall had the duty to look for approaching traffic and to see what was in plain sight. *Laux v. Robinson, supra.*

As general propositions, we have held that summary judgment is difficult to use in many tort cases, *Pfeifer v. Pfeifer, supra*, including the issues of contributory negligence and the comparative measure-

ment of negligence, Neb. Rev. Stat. § 25-1151 (Reissue 1979); *C. C. Natvig's Sons, Inc. v. Summers*, 198 Neb. 741, 255 N.W.2d 272 (1977).

Appellant contends that *Camerlinck v. Thomas*, 209 Neb. 843, 312 N.W.2d 260 (1981), is applicable: "Where reasonable minds might draw different conclusions from the evidence, the question as to the child's negligence or contributory negligence under the circumstances is a matter for determination by the jury." (Syllabus of the court.) The issue there was whether a 6-year-old child who struck another child with a stick could be charged with negligence as a matter of law. It also recognized that in some cases, " 'Even if a child is not capable of contributory negligence, if such child's conduct can be considered the sole proximate cause of his injury there can be no recovery,' " *id.* at 855, 312 N.W.2d at 266, citing *Korbelik v. Johnson*, 193 Neb. 356, 227 N.W.2d 21 (1975). Appellants also cite *Sacca v. Marshall*, *supra*, and *Bear v. Auguy*, *supra*. Both are distinguishable. In *Sacca* there was a genuine issue of material fact as to whether or not the minor had steered his bicycle into the path of the car. There was a direct conflict in the evidence. In *Bear* there was a genuine question as to whether or not it was reasonable for a 14½-year-old boy to run a stop sign at an intersection when he was being pursued by a large dog.

Appellant's main argument is that there was a material fact question concerning King's failure to maintain proper control and lookout, as shown by his speed in excess of 20 m.p.h., Neb. Rev. Stat. § 39-662 (Reissue 1978), and his failure to see Randall until the bicycle was 4 feet from his truck.

There are exceptions to *Camerlinck*, as discussed in *Armer v. Omaha and Council Bluffs St. Ry. Co.*, 151 Neb. 431, 440-41, 37 N.W.2d 607, 612 (1949): "Appellee refers to cases of this and other jurisdictions where the complainant suddenly and without means of notice to the motorist placed himself in a position

of peril in the course of travel of a motor vehicle, and recovery was denied. These presented happenings where there was no opportunity for the operator of the vehicle to act and prevent a collision; and these were inevitable because of the suddenness of the appearance of the victim and the proximity to the moving machine. Unavoidable accident, at least so far as the driver was concerned, describe [sic] these happenings. *In these cases speed, absence of signal of approach, failure of lookout, or lack of control was not the cause, proximate or remote, of the accident. . . .* If the situation is created so quickly that the motorist has no opportunity to avoid doing injury, there is no liability, but if he has time within which an ordinarily careful and prudent person could and would avoid inflicting damage, the problem of whether or not his acts or omissions were negligent, or the proximate cause of the damage, is for a jury." (Emphasis supplied.)

Although the exact point of impact is not known, these facts appear: The west edge of the driveway was about 68 feet west of the center of Ash Street. Emken said his truck was in the driveway, with the front 7 feet north of the edge of Rodeo Road, and that the impact was about 10 feet east of his truck and 25 feet southeast diagonally from the truck, which would be about 18 feet southeast from the edge of the street.

Concerning the reasonableness of King's speed at 30 to 32 m.p.h., and disregarding the width of the Emken truck, the maximum distance that King traveled from the center of the intersection was 58 feet. It would take him 1.2 seconds to drive that distance at that speed. At 20 m.p.h. it would take him 1.9 seconds. His speed was not a material fact question, and it did not contribute to Randall's injury. *Hersh v. Miller*, 169 Neb. 517, 99 N.W.2d 878 (1959). At most, a slower speed would have placed the point of impact nearer the front of the truck.

When King left the intersection, he saw the Emken

pickup stopped in the driveway; he did not see Randall. King did not look in the direction of the pickup in the driveway again. King's pickup was in plain sight all of the time as Randall approached the edge of Rodeo Road. Randall did not either stop, look in the direction of King, or yield the right-of-way; he continuously propelled his bicycle into the street and against King's truck. Randall's own conduct placed him in a position of peril, and King had no opportunity to slow, stop, or turn aside to prevent the collision. Had King seen Randall pedaling along the east side of the Emken pickup, his first notice that Randall was not going to stop would have been when Randall passed the front of the pickup, which was 25 feet from impact, and his first notice that Randall would not yield the right-of-way was when Randall entered Rodeo Road, which was 18 feet from impact. At that time Randall could have safely turned east in the outside lane of the street. King could not have avoided the collision. There was no genuine issue of material fact concerning either control or lookout.

"Where the evidence shows without dispute that the proximate cause of a collision is the failure of the driver of a vehicle entering a highway from a private road to look for approaching vehicles, the failure to look constitutes such negligence as will bar recovery as a matter of law." (Syllabus of the court.) *Kubo v. Fish*, 152 Neb. 74, 40 N.W.2d 270 (1949).

On the record made by defendants, Randall's conduct was shown to be the proximate cause of his injury, and he cannot recover. *Kubo v. Fish, supra.*

Movants having made a prima facie showing for summary judgment, plaintiff was required to overcome it. *Hanzlik v. Paustian*, 211 Neb. 322, 318 N.W.2d 712 (1982). Plaintiff produced an attorney's affidavit that at trial an expert would reconstruct the accident scene. Neb. Rev. Stat. § 25-1334 (Reissue 1979) requires that the "affidavits shall be made on personal knowledge, [and] shall set forth such

facts as would be admissible in evidence. . . ." Further, the affidavit did not controvert any of movants' competent evidence, and it did not establish the existence of a question of material fact. *Eden v. Klaas*, 165 Neb. 323, 85 N.W.2d 643 (1957).

Movants were entitled to summary judgment as a matter of law.

It is not necessary to discuss the other assigned errors.

AFFIRMED.