SANDRA K. MILNES, APPELLANT, V. LANCE W. JACOBS, APPELLEE.

510 N.W.2d 395

Filed May 4, 1993.   No. A-91-477.

William R. Johnson and Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Joseph K. Meusey and Lori L. Fuhrman, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

MILLER-LERMAN and WRIGHT, Judges, and NORTON, District Judge, Retired.

NORTON, District Judge, Retired.

This is an appeal from the district court for Douglas County, Nebraska, involving a jury verdict rendered in an automobile accident case wherein the plaintiff, Sandra K. Milnes, alleged that the defendant, Lance W. Jacobs, was negligent in making a left turn in front of her at an intersection at which Milnes had the right-of-way. In defense, Jacobs asserted that Milnes was contributorily negligent and, over objection, presented

evidence that part of the damages Milnes claimed were due to a postaccident back injury sustained while shoveling snow. The jury returned a verdict for Milnes on the issue of liability, but awarded only 53 percent of her stipulated special damages. Milnes moved for a new trial on the issue of damages, which motion was denied. In this appeal, Milnes assigns three errors, to wit: (1) The trial court committed error in submitting the issue of contributory negligence to the jury; (2) the trial court committed error in permitting testimony about the possible relationship between shoveling snow several months after the accident, as well as other possible aggravating activities in the future, and Milnes' continued pain; and (3) the award of damages, in an amount less than the stipulated medical expenses, is unsupported by the evidence. We reverse the judgment after consideration of the first assignment of error and remand the cause for a new trial.

On October 22, 1987, at approximately 4:30 p.m., Milnes and Jacobs were involved in a two-vehicle accident at the intersection of Q Street and Millard Avenue in Omaha, Nebraska. Milnes was operating a 1982 Camaro, and Jacobs a 1984 Blazer. The weather conditions on the day of the accident were good, there was no moisture on the roadway, and it was a sunny day. Immediately preceding the accident, Jacobs was approaching the intersection from the west in the turn lane on Q Street with his signal lights flashing and Milnes was traveling west in the middle lane on Q Street. The collision occurred when Jacobs attempted to turn left in front of Milnes into the northbound lane of Millard Avenue.

As both drivers approached the intersection, they noticed that the traffic lights controlling east-west traffic were green. Milnes was not preceded by another vehicle, and she was traveling between 25 and 30 m.p.h. She could recall that there were other vehicles on her right as she approached the intersection, but did not remember if any cars were on her left in the turn lane. There was a vehicle preceding Jacobs from the west, and Milnes noted this vehicle. She did not notice Jacobs' vehicle.

The vehicle preceding Jacobs turned left in front of Milnes into the northbound lane of Millard Avenue, and she braked

for it as it did so. Immediately after she braked, Milnes turned to her passenger and remarked, " 'Can you believe what he just did?' " It was then that she became aware that her passenger's eyes were " 'getting real big [as] if he was going to point or brace himself . . . . And I looked forward, and [Jacobs] was just right there.' "

Before the collision, Jacobs and Milnes saw one another when they were about one car length apart and unable to avoid an impact. Jacobs was traveling at a speed of approximately 20 m.p.h. when he entered the turn lane. He did not stop or slow down before beginning to turn left because he estimated that Milnes was four to five car lengths from the intersection, but his view was blocked by a van in the opposite turn lane. His estimate of Milnes' position was based on his earlier observation of her vehicle when it was almost a block and a half away from him as he came down the hill on Q Street and entered the left turn lane.

During the impact, Milnes flew forward, her knees hit the dash, and her face hit the steering column. Her face "hurt real bad" and later swelled up. In addition, her two front teeth were " 'traumatized,' " one tooth was chipped, and she reported feeling generally numb. She was transported to a hospital, given initial treatment, and released. About 2 days after the accident, Milnes' back began to hurt. Although she had appointments for her teeth, nose, and knees shortly after the accident, it was sometime later before she first saw Dr. James O'Hara about her back.

The collision revived knee injuries that Milnes had sustained in an accident during her childhood. In April 1978, when she was 8 years old, Milnes was involved in an automobile accident in which she was a passenger in an automobile driven by her mother. As a result of that collision, she injured her knees and eyes. At that time, Milnes was treated by Dr. O'Hara, who diagnosed her knee problem as a softening of the tissue below the knee. She testified that after the 1978 accident, and prior to the 1987 accident, she held several jobs at such places as Burger King, Bonanza, and Motel 8. Her job at Motel 8 included cleaning rooms, vacuuming, making beds, and cleaning showers. None of Milnes' employment activities had a negative

effect on her back.

Dr. O'Hara prescribed exercises for the back pains suffered by Milnes, which she continued for only a short time because "[t]hey were not helping." Eventually, she was referred to Dr. Patrick Bowman, a back specialist, who prescribed back therapy, "back school," and medications. After a CAT scan, Dr. Bowman diagnosed Milnes as having a condition called pars defect, or spondylolysis, which predated the accident and which she probably developed sometime between the ages of 8 and 15 years.

According to the evidence, pars defect occurs in about 6 percent of the population and is not a rare condition. Most people with this condition are asymptomatic and are oblivious to the fact that they have this defect. It is, in effect, a stress fracture of the spine, and most who are so affected compensate by developing soft-tissue mechanisms that make up for the lack of bone integrity resulting from the fracture. Dr. Bowman testified that a traumatic event that disrupts the soft-tissue compensatory mechanisms causes the pars defect to become symptomatic. Therefore, the issue, as he stated it, "is not whether the broken bone predated the accident or not, the issue is what caused the patient to be symptomatic and disabled where she wasn't before." Dr. Bowman testified that, in his opinion, Milnes would not have a prognosis of 15-percent permanent disability if she had not been in the October 1987 accident.

After discovering the stress fracture, Dr. Bowman did not change his recommendation regarding back exercises, which he believed would help strengthen the muscles and soft tissue. At the time of trial, Milnes was still sporadically doing the exercises she had learned in back school. In addition, she had received several caudal blocks, at her request.

By February 1989, Milnes was, in her own words, "doing pretty good," and she tried to shovel snow from her parents' driveway. She stopped this activity after cleaning about half a car length because she was experiencing back pain. An appointment was scheduled with Dr. Bowman for February 3, when Milnes reported to him that she could hardly move after shoveling snow and still had pain. She again saw Dr. Bowman

on March 10, when he suggested that she resume her exercises with more regularity and scheduled an appointment for 3 weeks later. However, Milnes failed to return. She did not contact Dr. Bowman until June 8, when she called to schedule a caudal block. Milnes testified that her back pain eventually returned to the condition it was in prior to the snow-shoveling incident.

At the time of trial, Dr. Michael Morrison testified, over objection, that spondylolysis can become symptomatic without some outside event—while a person is working or lifting something heavy. He further testified that shoveling heavy snow is the "type of workload [that] could precipitate lower back pain in this type of condition." He did agree that whether a certain activity would trigger an asymptomatic person to become symptomatic depended on the specific person and the activities involved and that his assertions were possibilities, not fact.

With regard to the first error assigned, we must determine whether or not there was any competent evidence upon which a jury could find that Milnes was contributorily negligent. In our examination of this matter, which is a question of law, we have an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

Contributory negligence is conduct for which a plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence on the part of the defendant, contributes to the injury as a proximate cause. *Circo v. Transit Auth. of City of Omaha*, 217 Neb. 497, 348 N.W.2d 908 (1984); *Steinauer v. Sarpy County*, 217 Neb. 830, 353 N.W.2d 715 (1984).

The duty implicated in this case is the duty to keep a proper lookout. Drivers of motor vehicles have the duty to keep a proper lookout and watch where they are driving, even though they are rightfully on the highway and have the right-of-way. In addition, they must keep a lookout ahead, in the direction of travel, or in the direction from which others may be expected to approach and are bound to take notice of the road, to observe

conditions along the way, and to know what is in front of them for a reasonable distance. *Circo v. Transit Auth. of City of Omaha, supra*; *Murray v. Pearson Appliance Store*, 155 Neb. 860, 54 N.W.2d 250 (1952).

In this case, there is evidence that Milnes looked away from the road, and at her passenger, immediately before impact. This evidence could present an issue as to whether Milnes breached her duty to keep a proper lookout. It is, however, the only affirmative evidence in the case regarding potential misconduct on the part of Milnes; and if the accident were unavoidable, then Milnes' failure to keep a proper lookout could not be a contributing or proximate cause of her injuries. *McFarland v. King*, 216 Neb. 92, 97, 341 N.W.2d 920, 923 (1983), stated the proposition as follows:

> "If the situation is created so quickly that the motorist has no opportunity to avoid doing injury, there is no liability, but if he has time within which an ordinarily careful and prudent person could and would avoid inflicting damage, the problem of whether or not his acts or omissions were negligent, or the proximate cause of the damage, is for a jury."

According to the evidence, Milnes was approximately two car lengths from the intersection when the vehicle in front of Jacobs began to turn. In order to avoid the turning vehicle, she slowed her vehicle to approximately 20 to 25 m.p.h. At that speed, she was presumably between one car length away from or just entering the intersection at the moment she glanced at her passenger. Traveling at 20 m.p.h., she would have covered 29.33 feet per second. Even if she had not glanced away, she obviously could not have reacted quickly enough to totally stop her vehicle before reaching the middle of the intersection. At the most, she would have struck Jacobs at a different point on his vehicle.

Jacobs testified he had calculated that he could make the left-hand turn before Milnes got to the intersection. Taking into account the evidence that he did not see Milnes at the intersection until he was one car length away from her, he could not have reacted quickly enough to prevent himself from turning in her path. Therefore, the collision itself was

unavoidable, and Milnes' glance at her passenger could not have been a contributing or proximate cause of the accident. Accordingly, it was error to submit the issue of contributory negligence on the part of Milnes to the jury.

Because we have determined that there was no competent evidence to support the defense of contributory negligence and that it was, thus, prejudicial error to submit that issue to the jury, it is unnecessary for us to address the remaining assignments of error. See, *Oberhelman v. Blount*, 196 Neb. 42, 241 N.W.2d 355 (1976); *Spath v. Coon*, 189 Neb. 822, 205 N.W.2d 541 (1973). We reverse the judgment and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.