CARMEN LUELLMAN, MOTHER AND NEXT FRIEND OF STEVEN LUTT, A MINOR, APPELLANT, V. DOROTHY J. AMBROZ, APPELLEE.

516 N.W.2d 627

Filed May 24, 1994.   No. A-92-983.

John M. Gerrard and Samuel G. Kaplan, of Gerrard, Stratton & Mapes, P.C., for appellant.

Kathleen Koenig Rockey, of Domina & Copple, P.C., for appellee.

HANNON and MILLER-LERMAN, Judges, and WARREN, District Judge, Retired.

HANNON, Judge.

This personal injury action was commenced by Carmen Luellman, on behalf of herself and for the benefit of her son, Steven Lutt, a minor, against Dorothy J. Ambroz, the defendant. The claim arises out of a collision between a car being driven by Ambroz and a bicycle being ridden by Lutt. The collision occurred while Ambroz was making a right-hand turn and Lutt was crossing a street in a crosswalk after leaving the sidewalk area. Luellman alleges that Ambroz was negligent, and Ambroz counters that Lutt was contributorily negligent. At trial, after Luellman rested, the court granted Ambroz' motion for a directed verdict, stating Lutt was contributorily negligent as a matter of law because he failed to keep a proper

lookout and failed to stop before proceeding from the sidewalk into the crosswalk. Luellman appeals. We conclude Lutt was not contributorily negligent as a matter of law, and we reverse the judgment and remand the cause for a new trial.

## I. PLEADINGS

Luellman alleges that on October 15, 1987, when Lutt was 14 years of age, he was riding his bicycle south on a sidewalk that runs parallel with and is immediately west of First Street in Norfolk. He approached the intersection of Madison Avenue and First Street and began crossing Madison Avenue at the crosswalk. The intersection is in a commercial area of the city, and its traffic is controlled by signal lights.

At the time, Ambroz was driving her car south on First Street and turned right onto Madison Avenue at the intersection. The signal light on First Street was green. The Ambroz vehicle struck Lutt's bicycle while he was in the crosswalk on Madison Avenue, allegedly causing personal injuries to Lutt. Luellman asserts Ambroz was negligent by failing to keep a proper lookout, failing to exercise proper control of her vehicle, failing to yield the right-of-way to Lutt, and failing to turn to avoid colliding with his bicycle.

In her answer, Ambroz denied being negligent and alleged that Lutt was negligent because he failed to exercise reasonable control over his bicycle and failed to maintain a proper lookout and, as a result, entered Madison Avenue directly in front of Ambroz.

## II. EVIDENCE

Upon an appeal from the granting of a motion for directed verdict, an appellate court views the evidence in the light most favorable to the party against whom the motion was directed. *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991). Therefore, the following summary of the evidence is viewed in the light most favorable to Luellman.

Lutt testified that he and two of his friends were on their way to a junior high football game. The three friends were each riding a bicycle and had stopped at a convenience store to buy some candy and pop. The record shows that Lutt had purchased a "Super Big Gulp," which is a large cup of pop, and

while he rode his bike, he rested the cup on one of the handlebars.

The boys traveled south down the sidewalk, which is parallel to First Street, before entering the intersection at First Street and Madison Avenue. The two other boys preceded Lutt into the crosswalk on Madison Avenue. There is no evidence showing how fast they were traveling. Lutt testified that he "looked left, because that is where a car would be turning, and there were cars sitting [there] waiting to go across or turn." Lutt testified that he looked to both the left and the right before entering the crosswalk and that the light was green. He further stated that he did not stop his bike at any time prior to entering the crosswalk and did not see Ambroz' car until he heard her brakes. He testified that he "went about three-fourths of the way across the first lane and heard some brakes and looked to my left and I was struck by a car." He stated that the car struck the rear tire of his bike and that he was thrown 3 to 3¹/₂ feet onto his right side. The upper outside portion of his right thigh, which hit the pavement when he fell off the bicycle, was injured.

Ambroz pulled over to the right curb on Madison Avenue. Lutt was able to get up after the fall, and he walked his bike over to Ambroz' car. Lutt stated that Ambroz' exact words to him were " 'I'm sorry I didn't see you.' "

Upon adverse examination, Ambroz testified that she was on her way to pick up her granddaughter from school and was heading south on First Street. She testified she saw the three boys near the intersection, straddling their bikes, but not riding them. She stated that because she had the green light, she slowed down to about 5 m.p.h., but did not stop, before making the right-hand turn onto Madison Avenue. Ambroz further testified that she did not see anyone or anything in the crosswalk at the time she was making the turn. She testified that after she turned the corner, Lutt pulled out in front of her. She applied her brakes immediately, put the car in park, and got out. She stated that her car did not make contact with Lutt's bicycle, although she admitted that at the time, she inquired if Lutt was hurt. She testified that "I feel he come [sic] around the sign across in front of me" and that he was already in front of

her car when she saw him, but that she did not see where he came from. She also testified that after the accident she saw the other boys across Madison Avenue, but she did not know how they got there.

The record contains testimony and photographs regarding the condition of the bicycle. The photos show that the rear wheel is missing two or three spokes.

One of the two boys riding with Lutt that day, Michael Germann, testified that he heard the screeching of tires immediately before the accident and saw Ambroz' car hit Lutt. Germann testified Lutt was "three or four" feet from the curb on the north side of Madison Avenue when Lutt was struck by Ambroz.

## III. DIRECTED VERDICT

After Luellman had rested her case, the trial judge granted Ambroz' motion for a directed verdict. In so doing, the judge stated the following:

> Whether or not [Lutt] entered Madison Avenue from the sidewalk or from the driveway is really not a controlling factor. The factor is that he's on a vehicle, he's not a pedestrian, he enters Madison Avenue without complying with 39-638, which provides that before entering the highway he shall yield right-of-way to all vehicles approaching on such highway. So he's negligent in that regard also. But the main negligence is failing to look and see that [which] he should have seen. Because had he seen that which he should have seen, he would have seen the plaintiff's — defendant's car and governed his actions accordingly.

The court found Lutt was negligent for failing to look and to see the Ambroz vehicle. Lutt filed a motion for new trial, but this motion raised no new issue. The motion was denied.

## IV. ASSIGNMENTS OF ERROR

Luellman asserts the trial court erred (1) in finding that Lutt was guilty of contributory negligence as a matter of law, sufficient to bar recovery, and sustaining Ambroz' motion for a directed verdict and (2) in overruling Luellman's motion for new trial.

## V. SCOPE OF REVIEW

In considering an appeal from an order granting a motion for directed verdict at the close of the plaintiff's case, an appellate court must determine whether the cause of action was proved and in so doing must consider the plaintiff's evidence as true and give the plaintiff the benefit of reasonable conclusions deducible from that evidence. *Russell v. Norton*, 229 Neb. 379, 427 N.W.2d 762 (1988); *D.S. v. United Catholic Soc. Servs.*, 227 Neb. 654, 419 N.W.2d 531 (1988). A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the judgment is made, the case may not be decided as a matter of law. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992); *Leonard v. Wilson*, 238 Neb. 1, 468 N.W.2d 604 (1991); *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988).

## VI. DISCUSSION

In granting the directed verdict, the trial court stated specific reasons why it concluded Lutt was negligent as a matter of law. In their briefs, the parties argue regarding these findings, as well as arguing other issues. We organize our discussion in the following manner: (1) What is the effect of Lutt's minority on his being negligent as a matter of law? (2) What is the effect of the applicable statutes on the relative duties of the parties to each other? (3) What was Lutt's duty to see Ambroz' vehicle upon looking?

### 1. LUTT'S MINORITY

The Supreme Court has adopted the rule stated in Restatement (Second) of Torts § 283 A at 14 (1965), which provides, in relevant part, that "[i]f the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable person of like age, intelligence and experience under like circumstances." See *Cullinane v.*

*Interstate Iron & Metal,* 216 Neb. 245, 343 N.W.2d 725 (1984). In *Bear v. Auguy,* 164 Neb. 756, 768, 83 N.W.2d 559, 567 (1957), a case involving the alleged negligence of a 14-year-old boy, the Supreme Court stated the following:

> Whether or not negligence may be attributed to a minor of the age of the plaintiff is usually a matter for a jury under the circumstances of each case. It is only in an extreme situation where the facts show plainly knowledge and appreciation of the danger that may be incurred, if certain action is had, that a court may decide as a matter of law that a minor of such an age was guilty of negligence, or that his act or omission was the proximate cause of the happening in question.

The record does not indisputably show Lutt appreciated the danger that would arise by not seeing traffic on the street parallel to the sidewalk. It is difficult if not impossible for someone to appreciate the dangers by merely failing to see another actor upon looking. There is no evidence that Lutt appreciated the danger of not stopping his bicycle and of not dismounting before entering the crosswalk, even if we assume Lutt had such a duty. Short of an admission of such appreciation by Lutt, it is difficult to conceive of how evidence of the appreciation of such danger could be obtained.

The trial court also found Lutt was negligent for failing to see that which he should have seen. The evidence is undisputed that he looked. While it is possible to anticipate that dangers exist even though they may result from the unknown, it is extremely difficult to find as a matter of law that a minor appreciated danger from something of which he was unaware. Lutt's knowledge and appreciation of any dangers of his situation is a question for the jury, even if one assumes that his actions would have been negligent as a matter of law if an adult had acted in the same way.

Ambroz relies principally upon *McFarland v. King,* 216 Neb. 92, 341 N.W.2d 920 (1983), in which the Supreme Court affirmed the trial court's decision to grant summary judgment against a bicyclist. McFarland, a 15-year-old boy, was riding his bicycle east on a sidewalk that was on the north side of an east-and-west street. King was driving his truck in the center lane of

the two westbound lanes of the street as he approached from the other direction. A driveway entered the street from the north, and it crossed the sidewalk upon which McFarland was riding his bicycle. A pickup was parked in the driveway facing the street, but the front of the pickup was several feet from the curbline. When McFarland reached the parked pickup, he looped his bicycle around the back end of the pickup and then rode beside the pickup out into the street, heading southeast. In the meantime, King, approaching from the east, had reached the point where McFarland rode into the street, and McFarland's bicycle collided with King's truck. McFarland did not remember the event, but the people in the parked pickup testified McFarland did not look east before going out into the street, and they described his speed as fast. The point of impact was approximately 25 feet in front of the parked pickup. King was driving 30 to 32 m.p.h. in a 20-m.p.h. zone.

The court concluded McFarland rode out into the street so suddenly that King did not have time to stop or turn. Therefore, the court concluded that if King was negligent by speeding, that negligence was not a proximate cause of the collision. The court held that McFarland's conduct was the sole cause of the collision and affirmed the trial court's summary judgment in favor of King.

Facially, *McFarland* has the same relevant issues as the case at hand, that is, both cases have the issues of the negligence of the automobile driver, the negligence of a minor bicyclist, and causation. The factual similarity that the collision in both cases happened immediately after the bicycles entered the street from the sidewalk gives good reason to compare the cases. However, the court in *McFarland* determined that case on the basis of causation. We think *McFarland* is more helpful as a contrast to the present case than as a precedent.

In *McFarland*, the court held that the acts of the minor and not the acts of the driver were the sole cause of the collision. Any negligence of the driver was not the cause of the collision, even though he was speeding. In the present case, Ambroz did not maintain that the record lacked evidence of negligence on her part or that her actions did not cause the collision. Her contention was and continues to be that Lutt was contributorily

negligent as a matter of law.

The Supreme Court in *McFarland* did not find the minor negligent as a matter of law, although the court did discuss his possible negligence. We will review the significance of the discussion of the minor's negligence in *McFarland* in our discussion below.

## 2. APPLICABLE STATUTES

Neb. Rev. Stat. § 39-638 (Reissue 1988) provides:

> The driver of a vehicle emerging from an alley, driveway, private road, or building shall stop such vehicle immediately before driving onto a sidewalk or onto the sidewalk area extending across such alley, driveway, road, or building entrance, and shall yield the right-of-way to any pedestrian approaching on any sidewalk extending across such alley, driveway, road, or building entrance. *Before entering the highway, he shall yield the right-of-way to all vehicles approaching on such highway.*

(Emphasis supplied.)

In *McFarland*, the Supreme Court specifically held that under § 39-638, a bicyclist "emerging from an alley, driveway, private road, or building" shall stop before entering a highway or road. *McFarland* does not hold, and § 39-638 does not require, that a bicyclist entering a crosswalk from a sidewalk must stop. Therefore, while § 39-638 was helpful in determining the cause of action in *McFarland*, it does not have the same impact on this case because Lutt was not emerging from a place where he was required to stop. In this connection, we also note that Ambroz does not allege in her answer that Lutt was negligent in failing to stop before entering the street.

Neb. Rev. Stat. § 39-686 (Reissue 1988) provides in part:

> Any person who rides a bicycle upon a roadway shall have all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle under sections 39-601 to 39-6,122, except for special bicycle regulations in sections 39-601 to 39-6,122 and except for those provisions of sections 39-601 to 39-6,122 which by their nature can have no application.

The trial court held that pursuant to § 39-686, Lutt was

subject to the rights and responsibilities of a car driver. Under *McFarland*, it is clear that a bicycle which is ridden onto the public streets is subject to the rules of the road while in the process of entering the street, as well as after it has entered the street and has become part of traffic. In this case, Lutt was crossing the street in a crosswalk as he went from one sidewalk to another, in approximately the same fashion as a pedestrian would cross. Is this riding a bicycle on the roadway? We have been unable to locate a Nebraska case on point, and we do not think *McFarland* gives any guidance.

In *Schallenberger v. Rudd*, 244 Kan. 230, 767 P.2d 841 (1989), the Kansas Supreme Court considered the effect of Kansas statutes similar to those enacted in Nebraska. We also find *Schallenberger* to be factually similar to the present case. In *Schallenberger*, a car and bicycle were in relative positions similar to those in this case. A child testified she was riding her bike on the sidewalk and stopped at a red light. When the light turned green, she saw to her left on the intersecting street a car that slowed as if to stop, and the child then proceeded into the crosswalk. The car made a right-hand turn on a red light and hit the bicycle.

Kansas law defines "sidewalk" in the same fashion as it is defined in Neb. Rev. Stat. § 39-602(92) (Reissue 1988), which states: "Sidewalk shall mean that portion of a highway between the curb lines, or the lateral lines of a roadway, and the adjacent property lines, intended for use by pedestrians." See Kan. Stat. Ann. § 8-1465 (1991). Kansas and Nebraska laws define "pedestrian" as a person afoot. Section 39-602(65); Kan. Stat. Ann. § 8-1446 (1991). The several statutes discussed by the Kansas court are either identical to or substantially the same as Nebraska statutes.

█ The Kansas trial court had instructed the jury that the bicycle was subject to the rules of the road. The Kansas Supreme Court held the trial court's ruling had the effect of making it unlawful to ride a bicycle on a sidewalk. The Kansas court also held that "in the absence of a specific statutory prohibition, bicycles, skateboards, tricycles, wheelchairs, baby carriages, toy wagons, and other human-powered conveyances may legally be used on the sidewalks with pedestrians." 244

Kan. at 234, 767 P.2d at 844.

▮ The Kansas Supreme Court went on to consider the issue of who had the right-of-way. The court held that Kansas law provides that at a red light "vehicular traffic may cautiously turn right on a steady red light after coming to a complete stop, but shall yield the right-of-way to pedestrians on the crosswalk and other traffic lawfully using the intersection." 244 Kan. at 234-35, 767 P.2d at 844. The court concluded that bicycle riders and users of other human-powered conveyances legally in the crosswalk were entitled to the same rights as pedestrians. In that case, the Kansas court held that the jury should have been instructed that the bicyclist had a legal right to ride on the sidewalk and that, therefore, if she was riding on the sidewalk, she had the right-of-way.

We note that the Nebraska statutes give some indication of the Legislature's intent in Neb. Rev. Stat. § 39-614(3)(c) (Reissue 1988), which allows a left-hand turn at the intersection of two one-way streets on a red light after a stop. Section 39-614(3)(c) also provides: "Such vehicular traffic shall yield the right-of-way to pedestrians and *persons riding bicycles lawfully within an adjacent crosswalk* and to other traffic lawfully using the intersection." (Emphasis supplied.) It could be argued that in light of other sections of § 39-614 which provide for similar rights-of-way for pedestrians without mentioning bicycles, the exemption extends only to bicycles in the specific instance mentioned in the statute. However, this would mean that a bicyclist riding on the left-hand side of a one-way street has protection against turning traffic while crossing a one-way street, but a bicyclist riding on the right-hand side of a one-way street or a two-way street would not have protection. Such a conclusion would make little sense in light of the protection sought to be established for bicyclists and pedestrians under § 39-614.

We believe the holding in *Schallenberger, supra,* is correct. If Lutt was riding in the crosswalk prior to the time Ambroz made her right turn, he had the right-of-way. Section 39-614(1)(a) states:

> Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign

at such place prohibits either such turn, but vehicular traffic, including vehicles turning right or left, shall yield *the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.*

(Emphasis supplied.)

This statute governs Ambroz' right turn. If Lutt was within the crosswalk on his bicycle, he was riding a vehicle lawfully within the crosswalk, just as a pedestrian might also be in the crosswalk. Ambroz did not have the right-of-way as a matter of law. In this case, the evidence is in dispute as to who was in the crosswalk first, Lutt or Ambroz. Ambroz testified to facts which would allow the conclusion that Lutt was not in the crosswalk when she turned. However, Lutt testified that he looked and did not see Ambroz before crossing. If anything, Lutt's evidence, as well as the position of the vehicles at the time of the collision, would support the conclusion that Lutt was in the crosswalk first. In any event, the facts being disputed, a jury question was presented.

### 3. LUTT'S DUTY TO SEE AMBROZ UPON LOOKING

Lutt specifically testified that he looked to his left before entering the crosswalk. However, since Lutt stated he looked to his left, the trial court erred in finding that as a matter of law Lutt failed to keep a proper lookout. The general rule is that failure to see an approaching vehicle is not negligence as a matter of law unless the other vehicle is indisputably located in a favored position. *Treffer v. Seevers,* 195 Neb. 114, 237 N.W.2d 114 (1975) (holding that a jury question was presented where the facts were in sharp conflict whether the driver turning left had sufficient time before an oncoming vehicle created an immediate hazard). On this issue, the present case is similar to that of *Hermansen v. Anderson Equipment Co.,* 174 Neb. 325, 330, 117 N.W.2d 791, 794 (1962), wherein the court held that the facts presented a jury question and stated:

Just when defendant reached the point where plaintiff was obligated to see him as "within that radius which denotes the limit of danger" is not at all certain in this record. On that issue, we have the directly opposite

testimony of the plaintiff that when he started to turn, he looked and did not see the defendant. We have the conflicting statement of defendant and his own witness as to the location of plaintiff when defendant began to make the right turn and plaintiff made his left turn.

We therefore conclude that Ambroz was not indisputably in the favored position and that the evidence would permit a finding that Lutt was in the favored position. The issue of who was in the favored position, along with how Lutt's status as a minor impacted on the sequence of events which unfolded, precludes the entry of a directed verdict for the defendant. The judgment is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.